**CHICAGO INSURANCE COMPANY**

v.

**PACIFIC INDEMNITY COMPANY and Chubb & Son, Inc.**

Civ. A. No. 81–2923.

United States District Court,
E.D. Pennsylvania.

Oct. 20, 1982.

Richard A. Kraemer, Philadelphia, Pa., for plaintiff.

Barton L. Post, Post & Schell, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Plaintiff, insurer under an excess policy, claims that the defendant Pacific Indemnity Company, the primary carrier, did not contribute its full policy limits to the settlement of a medical malpractice case, with the result that plaintiff paid more than its share.

A patient and her husband, Mr. and Mrs. Karl Pfeifer, sued the two gynecologists who had, in succession, treated Mrs. Pfeifer: Dr. Vallow, who had treated her from 1968 through 1971, and Dr. Gerstley, who had treated her from 1972 until May 1975. The Pfeifers contended that both physicians were negligent in failing to perform or obtain a biopsy of certain suspicious vaginal lesions. When a biopsy was finally performed on May 6, 1975, it was discovered that Mrs. Pfeifer suffered from a cancer which, by that time, had progressed to the incurable stage.

The two physicians practiced independently but, as it happened, had identical insurance coverages: a $100,000/$300,000 primary liability policy with the defendant Pacific, and a $1 million excess policy with plaintiff Chicago. Each of the policies covered a one-year period, and each was renewed annually.

It was and is the position of the defendant Pacific that its maximum exposure was $100,000 on behalf of each of the insured physicians. Accordingly, before the Pfeifer case was called for trial, Pacific tendered $200,000 toward settlement of the case. In the course of the trial, a total, lump-sum settlement of $850,000 was agreed upon. Of that amount, plaintiff, Chicago, paid $650,000, and the defendant Pacific paid $200,000.

Plaintiff thereupon brought the present suit, asserting, as mentioned above, that the respective insurance policies require a dif-

ferent allocation of the settlement burden. Both sides have moved for summary judgment. Although the point is not conceded by the defendants, it will be assumed for present purposes that plaintiff is proceeding under a valid and sufficient reservation of its right to pursue the claims asserted in this suit.

Plaintiff makes two basic claims: (1) that, since the alleged failure to obtain a biopsy was a continuing tort, each of Pacific's one-year policies rendered Pacific liable for at least $100,000 (*i.e.*, that Pacific's maximum liability should be calculated on a cumulative basis); and (2) that, in any event, the claims of Mrs. Pfeifer were separate from the claims of her husband, so that Pacific should have paid at least $200,000 on behalf of each physician, for a total of $400,000, rather than $100,000 per physician for a total of $200,000.

Before discussing these claims, it is necessary to address plaintiff's motion to disqualify defendants' counsel. In its initial response to plaintiff's Motion for Summary Judgment, defendant included an affidavit executed by Adrian R. King, Esq., a member of the law firm which represents defendant Pacific in this action. Mr. King had represented Dr. Gerstley in the malpractice case, and his affidavit discusses the chronology of the settlement of the malpractice action. All concerned recognize that, if Mr. King were to be called as a witness at the trial of this case, disqualification of his law firm would be appropriate. Apparently, it did not occur to defense counsel that DR 5–101(B) and DR 5–102(A) might also be implicated if Mr. King were to "testify" in affidavit form in connection with the summary judgment motions. Mr. King's affidavit merely corroborates the affidavit of the attorney (from another law firm) who represented Dr. Vallow in the malpractice case. The facts set forth in both affidavits are neither controverted nor controversial. Moreover, in the view I take of this case, both affidavits are immaterial. But in any event, in response to the disqualification motion, defense counsel promptly sought leave to withdraw the King affidavit from consideration, and I have not considered it in disposing of the pending summary judgment motions. An order will be entered striking the King affidavit from the record. The Motion for Disqualification will be denied.

## I.

Plaintiff's contention that the coverages under Pacific's successive annual policies should be "stacked" before plaintiff's excess policy is called into play must be rejected, for each of two fundamental reasons. The first is that, under the plain terms of the primary policies issued by defendant Pacific, the maximum amount which defendant could become obligated to pay on behalf of the insured was $100,000 per claim or $300,000 in the aggregate. The fact that the physician's alleged failure to make a proper diagnosis may have extended over several years does not mean that the failure gave rise to more than one claim of malpractice. Pacific obligated itself

"... To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury arising out of:

(a) malpractice, error or mistake of the insured ... in rendering or failing to render professional services....."

The limits of Pacific's liability are clearly expressed. The declaration page contains the following:

"LIMITS OF LIABILITY
$100,000 each claim
$300,000 aggregate"

The policy further provided:

"Limits of Liability: Subject to Insuring Agreement III, the limit of liability stated in the declarations as applicable to 'each claim' is the limit of the company's liability for all damages on account of each claim or suit covered hereby; subject to the foregoing provision respecting each claim, the limit of liability stated in the declarations as 'aggregate' is the total limit of the company's liability hereunder for all damages...."

Plaintiff cites recent developments in the law of insurance as it relates to the asbestos industry. In *Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980), the court adopted the "exposure" theory, and ruled that each of several insurance companies which were on the risk at various times must provide coverage for a pro rata share of the damages sustained as a result of prolonged exposure to asbestos fibers. Under that ruling, an insurance company, which, for example, provided products liability coverage during three of the twelve years in which the plaintiff was exposed to asbestos fibers manufactured by the insured would be required to bear one-fourth of the financial burden of the resulting asbestosis. But this approach is premised upon the concept that "bodily injury" within the meaning of the policies in question occurred with each inhalation of asbestos fibers which reached the lung and lodged there. In our case, Mrs. Pfeifer did not sustain separate injuries each time the doctor failed to order a biopsy. Moreover, and more importantly, the *Forty-Eight Insulations* court expressly held that no one company would be liable for amounts in excess of the limitations expressed in whichever single insurance policy provided the highest limits. "Stacking" coverages would not be permitted, since that would give the insured more than was bargained for. *See, also, Keene Corp. v. INA,* 667 F.2d 1034, 1049 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

A second reason for rejecting plaintiff's "stacking" argument is found in the provisions of the excess policy issued by plaintiff itself. That policy provides, in pertinent part:

"INSURING AGREEMENTS

"1.  COVERAGE

(C) PROFESSIONAL LIABILITY

The company agrees to indemnify the insured for ULTIMATE NET LOSS in excess of the RETAINED LIMIT which the INSURED shall become legally obligated to pay as damages because of injury for which coverage is afforded by the underlying professional liability policy(ies) listed in Schedule A, or by any renewals or replacement thereof. . . .

"3.  RETAINED LIMIT–LIMIT OF LIABILITY

With respect to coverage 1(C), the Company's liability shall be only for the ULTIMATE NET LOSS in excess of the INSURED's RETAINED LIMIT defined as an amount equal to the limit(s) of liability indicated beside the underlying professional liability policy(ies) listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the insured. . . . "

Pacific's policy is listed on schedule A; beside it the applicable limits are specified as "100,000 each claim-300,000 aggregate." Thus, plaintiff's policy makes plaintiff responsible for damages in excess of the retained limit, and the retained limit is specified as $100,000 per claim, $300,000 aggregate.

Under plaintiff's theory, the "retained limit" increased, and plaintiff's exposure substantially decreased, with each renewal of the primary policy; there is no suggestion that the premiums paid plaintiff reflected any such change.

II.

Plaintiff's remaining argument is that the Pfeifer lawsuit involved two claims against each of the doctors, hence defendant should have paid $200,000 under each of the two policies. It is true that there were two plaintiffs in the malpractice litigation. Mrs. Pfeifer claimed damages for her own injuries and also for her medical expenses. Her husband claimed damages for his wife's medical expenses, and for loss of consortium. In agreeing to the lump-sum settlement of $850,000, the parties did not specify what portion of this amount should be deemed to have been paid on behalf of each physician, nor how the recovery was to be divided between the two plaintiffs. A few days after the settlement was reached, the

trial judge approved the settlement and entered an order allocating the proceeds; while not important to the present decision, it should perhaps be noted that the Pfeifers and their counsel, rather than any of the parties to the present lawsuit, appear to have suggested the allocation formula. The trial court's distribution scheme may well have had practical benefits for Mr. and Mrs. Pfeifer, but it cannot readily be reconciled with generally accepted tort law principles: After deduction of counsel fees and expenses, the fund was distributed 15% to Mr. Pfeifer, 35% to Mrs. Pfeifer, and 50% to both of them "as joint tenants with right of survivorship".

Thus, even if plaintiff's contention that the settlement embraced two claims under each of the two policies were accepted as correct, plaintiff would not be entitled to summary judgment: There is no showing that the claim of Mr. Pfeifer exceeded $100,000 under either policy, and it cannot simply be assumed that the liability of the two physicians was equal or nearly so. Indeed, there may be merit to defendant's argument that, even if the limits under each of the two Pacific policies were $100,000 as to each of the Pfeifers, for a total of $200,000, the record demonstrates that it would be impossible for plaintiff to prove its case.

But I believe there is a more fundamental reason barring plaintiff's recovery in this case. In my view, Mrs. Pfeifer's claim and the derivative claim of her husband constituted but a single "claim" under each policy.

The $100,000 limit for "each claim" is stated in the policy to be "the limit of the company's liability for all damages on account of each claim or suit *covered hereby* ..." (emphasis added). In order to determine what claims or suits are "covered hereby," we turn to the coverage language, which obliges the company

"to pay on behalf of the insured all sums which the insured shall become legally obligated to pay *as damages because of injury arising out of* ... malpractice, error or mistake of the insured ... in ren-

dering or failing to render professional services ...." (Emphasis added.)

Each doctor was charged with but a single course of conduct constituting malpractice, namely, his failure timely to obtain a biopsy. Each doctor became legally obligated to pay damages to Mr. Pfeifer, as well as Mrs. Pfeifer "because of injury [to Mrs. Pfeifer] arising out of ... malpractice ... in rendering or failing to render professional services ..."; but $100,000 "is the limit of the company's liability for all damages on account of each claim or suit covered hereby." There was only one injury.

The law of Pennsylvania, like the law of other jurisdictions, is very clear that derivative claims do not constitute separate claims for purposes of applying policy limitations or deductibles in automobile liability insurance policies. Admittedly, the language of such policies differs from the language of Pacific's policy, but the reasoning of the courts lends support for a similar result here. In *Smith v. Cassida,* 403 Pa. 404, 169 A.2d 539 (1961), the court stated:

"To us, the pertinent language of the policy is clear that the liability limit intended for bodily injury to one person covered all damages flowing from that one individual's injuries, including the cost of care and the loss resulting from disability. The recoverable damages, direct and consequential, are essentially due to the bodily injury of one person. They may not be broken up in order to increase the liability limit provided for. The limit of liability applies to the person injured and not to the person suffering loss."

And in *Bernat v. Socke,* 180 Pa.Super. 512, 118 A.2d 253 (1955), the court noted that the construction urged by the plaintiff in the present case

"could be most inequitable, as, for example, where two persons are killed in one accident, but only one beneficiary or heir exists, there would be only one person sustaining damages and the liability would be limited to [that provided for one claim]" (at p. 516, 118 A.2d 253).

To accept plaintiff's argument would mean that a physician who negligently cared for two different patients, one of whom was single and responsible for her own medical expenses, and the other of whom was married, would, solely by virtue of that fortuitous circumstance, have double the amount of insurance protection with respect to the latter patient than with respect to the former. That simply does not make sense.

Plaintiff cites two district court decisions which, it must be conceded, seem to support its argument. In *Rodriguez v. Maryland Casualty Co.*, 369 F.Supp. 1144 (D.P.R.1971), a liability policy insuring a hospital provided coverage in the amount of $15,000 for "each claim" and $75,000 aggregate. The definition of that term was precisely that used in Pacific's policy in the present case. The hospital was charged with negligence which caused the death of a woman patient, who was survived by a husband, nine minor children, and one adult child. In a pretrial ruling concerning the extent of insurance coverage (it appears that the principal issue was whether amounts paid out during the policy period in other cases were chargeable against the $75,000 maximum) the court ruled that the company's exposure was $75,000, because there were 11 "claims" involved.

Perhaps because the court was announcing a pretrial ruling, for the guidance of counsel in conducting settlement negotiations and preparing for trial, and because its ruling would be subject to reconsideration, the court's treatment of this issue was somewhat peremptory. The court stated merely

"I hold that under the terms of the insurance policy the amount of coverage available is $75,000.

"... Mrs. Caraballo left her husband, nine minor children, and one daughter over 21 years of age. Claims have been brought by the widower, individually and on behalf of each minor child, and by the daughter of legal age. It is clear, therefore, that there are 11 claims arising from the death of Virginia Mercado Caraballo."

This isolated, unsupported, statement, made in the course of a pretrial ruling which was primarily concerned with other issues, is less than fully persuasive. At any rate, it is certainly not binding upon this Court, and does not purport to reflect or predict the law of Pennsylvania.

The other case relied upon by plaintiff is noteworthy because it involved the same plaintiff, the same defendant, and the same policy language, as does the present case. In *Chicago Ins. Co. v. Pacific Indemnity Co.*, 502 F.Supp. 725 (D.Md.1980), it was alleged that negligence by attending obstetricians in the course of delivering a baby had caused permanent brain damage to the infant, personal injuries to the mother, and derivative damages to the husband-father. The principal dispute concerned the relationship between the coverage provided the individual doctors for their own negligence ("coverage A"), and that provided to the partnership, and to the members of the partnership, for vicarious liability ("coverage B") under Pacific's primary policy. The limits of liability under each of these coverages was $100,000/$300,000. Two doctors were alleged to have been negligent. The case was settled for $300,000. Thus, everyone agreed that Pacific should have paid $200,000 under coverage A. Pacific contended that such payment exhausted its coverage, and that there was no additional coverage under coverage B. The excess carrier, Chicago, paid the additional $100,000 to complete the settlement, and brought suit to recover that sum from Pacific. In the course of ruling in favor of Chicago, the court did state that there were three claims involved: the claim on behalf of the injured child, the claim on behalf of the injured mother, and the derivative claim for past and future medical expenses. In support of that statement, the court merely cited the *Rodriguez* case, *supra*, without extensive discussion. Actually, the court's conclusion that there were three separate claims was not essential to its holding, and must be regarded as *dictum*. For it is clear that both the mother and the infant were injured, so there were admittedly at least two separate claimants, without regard to the

derivative claims of the husband. Moreover, even a single claim covered under coverage B was sufficient to demonstrate that the entire $300,000 settlement should have been paid by Pacific under the primary policy.

I am simply unable to agree that the two cases cited by plaintiff accurately reflect the law of Pennsylvania. In my view, the factor which determines the limits of liability under a medical malpractice insurance policy is the number of patients injured by the alleged malpractice, and not the number of persons adversely affected as a result of the patient's injury.

■ Plaintiff argues that defendant's policy is ambiguous, and that such ambiguity must be resolved adversely to the insurance company. That principle applies, however, only as between the insured and the company. It does not apply in a dispute between two insurance companies. Moreover, the alleged ambiguity in defendant's policy produces a corresponding ambiguity in plaintiff's policy which, if the principle of construing ambiguities against the insurance company were applicable, would merely produce a presumption against plaintiff which would cancel out the presumption against the defendant. If there is ambiguity in either policy, trade custom and usage may properly be looked to for aid in construing the policies. The defendants' uncontradicted affidavits establish that medical malpractice policies have universally been interpreted and applied in conformity with defendant's arguments in the present case.

Plaintiff's Motion for Summary Judgment will therefore be denied, and the defendants' Motion for Summary Judgment will be granted.