KEYSTONE INSURANCE COMPANY, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 85–1610.

United States District Court, W.D. Pennsylvania.

May 15, 1986.

---

1. The United States in its memorandum in support of its motion for summary judgment anticipates an argument by defendants Zerman and Rabushka that their claims enjoy a "superpriority" status under § 6323(b)(8), which excepts from IRS priority attorneys' liens on property acquired as a judgment or in satisfaction of a legal settlement, either of which the attorney dedicated professional services to obtain. The Court agrees that the legal fee claims in the instant case do not fall under § 6323(b)(8). The debt on which the United States seeks to levy does not represent a settlement or judgment secured through the services of the defendant attorneys, but rather represents expected compensation for services rendered by Ronald Nelson to B & H.

2. The other claims were filed on May 29, 1985 (Janice Nelson), June 26, 1985 (Allan Zerman), June 26, 1985 (Stanley Rabushka) and November 7, 1985 (Janice Nelson).

Peter B. Skeel, Pittsburgh, Pa., for plaintiff.

David B. White, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

This is an action to determine whether defendant is responsible for insurance coverage of Charlotte Borner's personal injuries. At the pretrial conference in March 1986 it became apparent that the matter might be resolved under Rule 56. Pursuant to our order the parties have filed cross-motions for summary judgment. Only defendant chose to file evidentiary material, although a stipulation was filed before the pretrial conference containing most of the documents necessary to decide this case. Neither side responded to the other's motion.

On August 23, 1982, Charlotte Borner was a passenger on a Port Authority Transit bus. A vehicle driven by Robert Linner struck the bus, injuring Borner. The vehicle Linner was driving is owned by William Rusnak and was not insured. Rusnak was a passenger at the time.

Plaintiff is Borner's insurance carrier. Defendant insures Linner's mother, with whom he resided at the time of the mishap. It is uncontested that defendant's coverage extends to Robert Linner if he satisfies certain conditions, described below, which form the heart of this dispute.

Borner sued Linner in state court for the benefit of defendant's coverage, prompting defendant to formally deny coverage. Stipulation, Docket No. 12, Exhibit A. Borner then made a claim against her own policy for uninsured motorist benefits. Plaintiff paid her the $15,000 limit in return for an assignment of rights to pursue any causes of action arising out of the accident. This is one such action, in which plaintiff seeks the $15,000 for wrongful denial of coverage.

Defendant's denial of coverage rests on its assertion that the vehicle Linner was driving is not one to which coverage was extended. This leads us to construe three brief sections of the policy which concern the persons who are insured, the vehicles that are insured, and the definitions. The section of defendant's policy defining "Persons Insured" covers, by amendment:

(2) While using a non-owned auto
  (a) you,
  (b) any resident relative using a four wheel private passenger auto or utility auto.

The use of these autos must be with the owner's permission. Defendant's Exhibits D and C at 3.

There is no question that Robert Linner qualifies as a resident relative. Under the heading "Insured Autos" the policy sets forth its coverage for:

(4) A non-owned auto used with the permission of the owner. This auto must not be available or furnished for your regular use.

Under the "Definitions" section the policy sets forth the meaning of:

(2) "Auto"— ... a land motor vehicle designed for use principally upon public roads....
(4) "Utility Auto"—means an auto with a rated load capacity of 2,000 pounds or less of the pick-up body, sedan delivery or panel truck type.

Defendant's Exhibit C at 4.

Defendant has submitted photographs of the Rusnak vehicle. Defendant's Exhibits A and B. The pictures show a well used six-wheel truck. The cab of the truck is the same as that found on Chevrolet pick-up trucks of the same vintage. The truck has a dump body, however, complete with sideboards and a tailgate that can be opened either at the top or bottom.

William Rusnak owned the truck since 1977. He testified at his deposition that he knew of no plates or markings on the truck showing its rated load capacity, nor could

he locate the owner's manual or state registration card. Transcript 4–7. We thus have no definitive evidence on this issue. He did state that the gross vehicle weight was 11,000 pounds. He deduced this figure from the amount he paid for state registration; the state charges a sliding fee for registration based on gross vehicle weight. The Pennsylvania definition of gross vehicle weight refers to the weight listed on a weight certification label required by federal law which must provide the manufacturer's safety recommendations for "the loaded weight of a single vehicle." 75 Pa.Cons.Stat.Ann. § 102 (Purdon's 1977). Rusnak stated that the truck could carry more than 2,500 pounds but he believed this was beyond the legal limit. Transcript 8–9. He testified that it could "appropriately" carry 2,500 pounds.[1] Transcript at 9. He did confirm that the dump bed was operable and was activated by a lever inside the cab. Transcript 17–18.

Plaintiff contends that the policy is ambiguous and this must lead to a construction in its favor. Conceding that the vehicle is a dump truck, plaintiff argues that it nevertheless may fit the definition of "Auto" in the policy because it is capable of carrying private passengers and is used principally on paved roads. We cannot agree.

■ We recognize the principle, fully applicable in Pennsylvania, that ambiguities in insurance policies should be resolved against the insurer. But this doctrine is designed to protect the insured; it does not apply to disputes between two insurers. *Chicago Insurance Co. v. Pacific Indemnity Co.*, 566 F.Supp. 954 (E.D.Pa.1982); *Union Carbide Corporation v. Travelers Indemnity Company*, 399 F.Supp. 12 (W.D.Pa.1975). That said, a fair reading of the policy as a whole reveals it is not ambiguous and does not extend to Linner's operation of the Rusnak vehicle.

We know that Robert Linner was a resident relative driving a non-owned vehicle. He is a "person insured" under defendant's policy when "using a four wheel private passenger auto or utility auto. The use of these autos must be with the owner's permission."[2] Defendant's Exhibits D and C at 3. These provisions lead, not surprisingly, to the definitions section of the policy.

■ "Auto" in the policy refers to "a land motor vehicle designed for use principally upon public roads." Defendant's Exhibit C at 4. The dump truck unquestionably fits this description. It is subject to the further limiting characteristic when being operated by a resident relative, however, of being a four wheel private passenger vehicle. Rusnak's truck does not fit this description.

First, the truck has six wheels. Plaintiff argues that this is a meaningless technical distinction and refers us to a decision by the Court of Appeals for the Fourth Circuit in which the court so held on this very issue. *Seaboard Fire and Marine Insurance Co. v. Gibbs*, 392 F.2d 793 (4th Cir. 1968). We do not find *Seaboard* controlling for two reasons. The court there expressly construed the policy liberally in favor of the insured; we are not applying this doctrine. In addition, while the policy there was restricted to four wheeled vehicles, it was written for the insured's pickup truck. The construction of a policy for a pick-up truck as including six wheeled trucks is an easier task than so construing coverage for "four wheeled private passenger autos."

Pick-up trucks *are* included in the definition of "Utility Autos," and this highlights a second reason Rusnak's truck does not fit the definition of "Auto." The language of this separate category of covered vehicles helps define each category more clearly. Allstate obviously wished to distinguish covered vehicles based on their capacity— what the vehicles were intended to carry.

---

1. Police reports from the accident referred to a "one ton truck" but Rusnak does not know what this figure describes. Transcript at 14.

2. The provision for "Insured Autos" is consistent, using the same language in discussing coverage for non-owned autos.

The bare definition of "Auto" admittedly is general and encompasses anything on the road. Coverage also extends to "Utility Autos" which comprise only three types of vehicles: pick-up trucks, delivery sedans, and panel trucks. These vehicles must not be capable of carrying more than 2,000 pounds. The express use of weight restrictions in the "Utility Auto" category suggests two things: that the parallel reference to "four wheel private passenger autos" is not a generic description, and that it is intended to define carrying capacity and the primary purpose of the vehicle. We do not pretend to know the exclusive definition of "four wheel private passenger auto," but seen in this light, a six wheel dump truck does not fit the definition of "Autos" contained in the policy.

As to fitting the category of "Utility Auto," evidence on the truck's rated load capacity, which would be dispositive, is equivocal. Rusnak did testify to a basis for recalling the truck's 11,000 pound gross vehicle weight rating, which is the weight of both the truck and its maximum recommended load. We find it difficult to accept that a truck with such a gross rating might carry only 2,000 pounds. Regardless of the load capacity, however, we conclude that a dump truck does not qualify as a pick-up truck, a delivery sedan, or a panel truck.

*Conclusion*

While the temptation has arisen, we are reluctant to invoke any doctrine of plain meaning. We are not the first to note the continual reminders that exceedingly few aspects of language are plain, especially as applied to law. But because of the ubiquitousness of all forms of wheeled vehicles and the tangibility of differences among them, we believe that many aspects of these vehicles are subject to common understanding. Indeed, the manufacturers' fortunes are based partly on their ability to make the public aware of these differences. Applying this knowledge and the uncontested facts to the policy read as a whole, we find that the Rusnak truck is unambiguously excluded from coverage.

Defendant thus is entitled to judgment in its favor.