## MEYERS *v.* MEAGHER, ETC. ET AL.

[No. 138, September Term, 1975.]

*Decided March 2, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Bernard P. Jeweler*, with whom were *Gordon H. Levy* and *Edelman, Levy & Rubenstein, P.A.* on the brief, for appellant.

*Benjamin Lipsitz*, with whom were *Stephen L. Snyder* and *Eleanor J. Lipsitz* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

From judgments of $6,000.00 ($1,000.00 compensatory damages, $5,000.00 punitive damages) entered against Alfred Meyers in favor of John Joseph Meagher, Jr. (John) and of $1,000.00 compensatory damages entered against Meyers in favor of Mrs. Betty Jene Meagher (John's mother) on jury verdicts in the Circuit Court for Baltimore County, Meyers appealed to the Court of Special Appeals. We granted certiorari before the case was heard in that court.

In January, 1972, when the events which gave rise to this litigation took place, Meyers owned jointly, with two of his brothers, Franklin and William, a tract of improved real estate, which was vacant, located at 8220 Eastern Boulevard in Baltimore County. Meyers was employed as a clerk at North Point Liquors, a retail liquor store owned by three of his brothers, Oscar, Henry and William, located several miles from the Eastern Boulevard property, and lived over the liquor store.

Franklin Meyers was the owner of a 1953 gray Chevrolet pickup truck which was generally parked at the liquor store. Called as an adverse witness by the plaintiffs, Alfred Meyers

admitted that in January, 1972, he was the only one of the brothers who drove the truck, which he would drive occasionally to the Eastern Boulevard property, usually during his lunch hour, from 12:30 until 2:00 o'clock.

Between 5:00 and 5:30 o'clock on the afternoon of 3 January 1972, John Meagher and two high school classmates, Jeffrey Brown and Daniel Testa, alighted from a bus on Eastern Boulevard near the Back River Bridge, walked to the bank of the river, and along the bank under the bridge to an area north of Eastern Boulevard, looking for a dump where Jeffrey Brown had found an abandoned radio some days previously. By this time, all three were on the Meyers' property, and John, who was between the Meyers' house and garage, was examining a junked vehicle. At this moment, there was a shotgun blast, and John was hit in the back. As he fled in a southwesterly direction, he was struck by a second blast. He then ran west, along Eastern Boulevard.

Jeffrey Brown, who had fled to the east, after being hit by the first blast, flagged a passing car, which picked up John and took both boys to a drive-in restaurant several miles away, from which both boys got a ride home. As it turned out, all three boys had been hit, but it was John who had been peppered with shotgun pellets. Brown was taken to the hospital in an ambulance; Testa, by a police officer, and Meagher, by his mother.

Officer Walters of the Baltimore County Police, who had been summoned to the Brown home, made an examination of the Eastern Boulevard premises. He found fresh pellet marks in the shingles of the garage.

Later investigation by members of the police force developed the fact that Alfred Meyers owned a shotgun, which he kept at the liquor store. The officer who examined the gun testified that from his "knowledge of guns and shotguns from hunting it appeared it had been shot recently."

Kevin Bruce Love, who had stopped to buy gasoline between 5:30 and 6:00 o'clock on the afternoon of 3 January

1972 at the Payless gasoline station, across Eastern Boulevard from the Meyers' property, testified that he had seen three boys alight from a bus and walk toward the rear of the gasoline station; had heard, about 15 or 20 minutes later, what seemed to be a backfire from a truck, and then saw a gray Chevrolet pickup truck driven out of the driveway of 8220 Eastern Boulevard by a man whom he could not positively identify. Love had no difficulty identifying photographs of Franklin Meyers' truck as the truck which he had seen entering and later leaving the driveway of the Eastern Boulevard property, and sometime afterward, parked at the liquor store.

At the conclusion of the plaintiffs' case, Meyers' motion for a directed verdict was denied. He then offered no evidence, and renewed his motion for a directed verdict, which was again denied.

The trial judge (MacDaniel, J.) charged the jury fully. Meyers excepted to a portion of the charge on the ground that only John's father, who was not a party to the case, could recover for John's medical expenses.

After the jury had returned its verdicts, Meyers filed a motion for judgments n.o.v., or alternatively, for a new trial. When these motions were denied and judgment absolute entered, Meyers appealed. On appeal, he contends (i) that the trial court erred in denying the motion for judgment n.o.v. because the evidence did not show directly or by a rational inference that Meyers was responsible for the assault; and, (ii) that the trial court erred when it refused to instruct the jury that Mrs. Meagher was not entitled to an award of compensatory damages.

(i)

Our cases have long held that the function of an appellate court in reviewing the denial of a defendant's motion for a judgment n.o.v. is a narrow one. We must assume the truth of all credible evidence and of all inferences fairly deducible therefrom in the light most favorable to the plaintiff, *Stoskin v. Prensky*, 256 Md. 707, 709, 262 A. 2d 48, 49 (1970);

*P. Flanigan & Sons, Inc. v. Childs,* 251 Md. 646, 653, 248 A. 2d 473, 477 (1968); *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A. 2d 53, 55 (1961).

While it is true that the evidence here was circumstantial, there was undisputed testimony from which the jury could have found that Meyers was guilty of the assault. It could have found that Meyers was one of the owners of the Eastern Boulevard property, which he visited from time to time because it was vacant; that he was, at the time of the assault, the only person who drove the gray Chevrolet pickup which Love had positively identified as the pickup truck he had seen entering and leaving the property at the time of the assault. Finally, the jury could have found that Meyers was the owner of a recently fired shotgun. For a similar case, where a jury verdict was grounded on circumstantial evidence, see *Yommer v. McKenzie,* 255 Md. 220, 227-28, 257 A. 2d 138, 141-42 (1969).

The jury was free to believe or disbelieve the evidence, *Racine v. Wheeler,* 245 Md. 139, 225 A. 2d 444 (1967), or any witness, *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256 (1946), and reach its decision, since the evidence and inferences deducible therefrom rose above surmise or speculation and reached the level of reasonable probability, *Straughan v. Tsouvalos,* 246 Md. 242, 228 A. 2d 300 (1967).

(ii)

Maryland Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.) Art. 72A, § 1 provides, in pertinent part:

> "The father and mother are the joint guardians of their child under eighteen years of age and are jointly and severally charged with its support, care, nurture, welfare and education. . . ."

At the time of his injury, John was 15 years of age. He was taken to the Baltimore City Hospitals by his mother where he was hospitalized for six days and was treated on an outpatient basis down to the time of trial, more than three years later. It was stipulated that the hospital's bill for

inpatient care was $924.00, and John's testimony that the charges for outpatient care had been $121.00 was not disputed.

Since it was Mrs. Meagher who took John to the hospital, as a practical matter she would have been primarily responsible for the payment of the bill and could maintain a separate recovery action, *Hudson v. Hudson*, 226 Md. 521, 528, 174 A. 2d 339, 342 (1961). The fact that the bill was subsequently paid by Mr. Meagher's Blue Cross and Blue Shield coverage may give rise to a right of subrogation, but does not operate in mitigation of Mrs. Meagher's recovery, *Plank v. Summers*, 203 Md. 552, 556-62, 102 A. 2d 262, 264-66 (1954); *Baltimore City Pass. Ry. Co. v. Baer*, 90 Md. 97, 108, 44 A. 992, 994 (1899), and *see Leizear v. Butler*, 226 Md. 171, 175, 172 A. 2d 518, 520-21 (1961). We think that the jury instruction sought by Meyers was properly denied.

*Judgments affirmed, costs to be paid by appellant.*