**INTERSTATE FIRE & CASUALTY COMPANY, Appellee,**

v.

**The PACIFIC INDEMNITY COMPANY and Chubb & Son, Incorporated, Appellants.**

No. 83–1974.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1984.

Decided July 19, 1984.

---

Kieron F. Quinn, Baltimore, Md. (Patrick K. Cameron; Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for appellants.

E. Dale Adkins, III, Baltimore, Md. (Ward B. Coe, Jr.; Anderson, Coe & King, Baltimore, Md., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

Pacific Indemnity Company ("Pacific") and its Maryland representative, Chubb & Son, Incorporated ("Chubb"), appeal from the district court's order granting summary judgment for Interstate Fire & Casualty Company ("Interstate"). The district court held that under Pacific's medical malpractice policy, a separate $200,000 limit applied to the claim of George M. Cross, Sr., for the financial loss sustained by him as a result of the insured's alleged malpractice. Because we conclude that the dispositive issue of this case presents a question of Maryland law for which there appears to be no controlling precedent, we certify the question set forth in Part II of this opinion to the Maryland Court of Appeals, pursuant to that state's certification statute, Md. Cts. & Jud.Proc.Code Ann. §§ 12–601 *et seq.* (1984 Replacement Vol.).

I.

On September 14, 1979, George M. Cross, Jr. (George), an infant, by his father and next friend, George M. Cross, Sr., Barbara Ann Cross (Mrs. Cross), the mother of George, and George M. Cross, Sr. (Mr. Cross), in his own right, filed a claim against Vibhaker J. Mody, M.D., and others with the Director of the Maryland Health Claims Arbitration Office.[1] The claimants alleged that the negligence of Dr. Mody in delivering George caused: (1) George to suffer permanent brain damage; (2) Mr. Cross to incur medical, custodial, education-

their settlement agreement for entry of an appropriate order in that court.

**1.** Md.Cts. & Jud.Proc.Code Ann. §§ 3–2A–01 *et seq.* (1984 Replacement Vol.).

al, and other expenses in the care and treatment of George; and (3) Mrs. Cross to suffer physical injuries as well as emotional shock and pain.

At the time of the alleged malpractice, Dr. Mody was insured by Pacific under an obstetricians' and gynecologists' policy providing primary medical malpractice coverage with limits of $200,000 for "each claim" and $600,000 in the aggregate. Dr. Mody was further insured under an excess policy issued by Interstate, providing coverage with a limit of $1,000,000 over and above Pacific's policy.

The pertinent language of Pacific's policy is as follows:

I.  COVERAGE AGREEMENTS

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

COVERAGE A—INDIVIDUAL PROFESSIONAL LIABILITY

Injury arising out of the rendering of or failure to render, during the policy period, professional services by the individual insured, ...

IV.  LIMITS OF LIABILITY

... the liability of the company for damages because of injury to which this insurance applies, sustained by any one person, shall not exceed the limit of liability stated in Part I of the declarations as applicable to each claim.

....

V.  DEFINITIONS

When used in reference to this insurance: ... *each claim means all claims or suits brought on account of injury sustained by any one person.*

(Emphasis added).

In March, 1981, Interstate and the Crosses entered into settlement negotiations. These negotiations resulted in a settlement of all claims against Dr. Mody for $560,000. At Interstate's request, the Crosses' attorney stated in a letter dated March 25, 1981, that the settlement sum would be divided among the claimants as follows:

| | |
|---|---|
| George M. Cross, Jr. | $350,000 |
| George M. Cross, Sr. | 200,000 |
| Barbara Ann Cross | 10,500 |

When the claim was settled, Interstate and Pacific disputed the amounts that each was required to pay under their respective policies. Pacific agreed that its insurance limits provided $10,500 for Mrs. Cross's claim. Pacific refused, however, to provide separate insurance limits for the claims of George and Mr. Cross, taking the position that those claims constituted a "single claim for purposes of applying the applicable insurance limits" of its policy. As a result, Pacific provided $210,500 toward satisfying the total settlement of $560,500. Interstate paid the balance of the settlement pursuant to its excess policy for Dr. Mody.

Interstate then filed this diversity action against Pacific and Chubb in federal district court seeking interpretation of Pacific's policy with Dr. Mody and recovery of $200,000 in damages. Defendants answered, and following discovery, the parties filed cross-motions for summary judgment. The issue presented was whether, under the terms of the primary policy, Pacific was obligated to contribute to the settlement of the claim of Mr. Cross as well as to that of his infant son.

Interstate conceded that under its excess policy it was required to contribute $150,000 to the settlement. Interstate contended, however, that the claim of George and the claim of Mr. Cross were not a single claim under Pacific's primary policy and that Pacific, therefore, was obligated to contribute $200,000 for the settlement of each of those claims, or a total of $400,000. Interstate asserted that Pacific's coverage was not limited to only patients' injuries or bodily injuries. Interstate maintained that the $200,000 "limits of liability" apply separately to each person who has sustained "injury," and that because Mr. Cross sustained injury when he became legally obligated to pay the medical and other expenses for the care of his son, his claim for that injury gave rise to an additional policy limit.

Pacific countered that its liability was limited to $200,000 for *all* claims brought on account of the injury sustained by George. Pacific maintained that the types of injuries to which its policy applied were limited to those injuries arising from the rendering of, or failure to render, professional medical services and that Mr. Cross's claim was derivative, arising from obligations imposed by law upon the parent-child relationship. Pacific acknowledged that under *Hudson v. Hudson*, 226 Md. 521, 174 A.2d 339 (1961), a parent as next friend may sue for damages for injury to his child. Pacific argued, however, that such damages cannot be split up in order to bring the claim within additional policy limits. According to Pacific, the factor that determines the number of separate policy limits available under its policy is the number of people actually injured by the malpractice, and not the number of persons that might have suffered loss as a result of Dr. Mody's alleged negligence. Pacific maintained that Mr. Cross's medical expenses arose out of the injury sustained by George, the "one person" for whom Pacific was required to pay a single policy limit for "all claims," regardless of which party actually asserted them.

In support of its position, Pacific relied on *American Fidelity and Cas. Co. v. Mahon*, 170 Md. 573, 185 A. 330 (1936), and *Traveler's Indemnity Co. v. Cornelsen*, 272 Md. 48, 321 A.2d 149 (1974). In *Mahon* and in *Cornelsen*, recovery was sought by spouses for loss of consortium and medical and hospital expenses. In that situation, the Maryland Court of Appeals held that loss of consortium and loss resulting from liability for medical and hospital expenses of the spouse, though cognizable at law,

did not constitute "bodily injuries" for which a higher policy limit was available. According to Pacific, although the language of the automobile liability insurance policies construed in *Mahon* and *Cornelsen* differs from the language found in many medical malpractice insurance policies, the reasoning adopted by the Maryland Court of Appeals in each of those cases compels a similar result in the present case. Pacific further supported its position by affidavits and deposition testimony establishing that up until 1980 [2] the parties to this action and the insurance industry as a whole had regularly adjusted claims of the kind here involved by treating the parent's claim for expenses for care of the infant as part of the infant's damages and, therefore, part of the primary insurance limit applicable to the infant.

The district court agreed with Interstate and granted summary judgment in its favor on August 3, 1983. Relying on *Hudson*, the district court rejected Pacific's argument that the father's claim was derivative and could not be considered separate from that of George. The district court found Pacific's reliance on *Mahon* and *Cornelsen* to be misplaced because both cases involved the interpretation of policies which included the words "bodily injury." Accordingly, the district court held: (1) that the term "each claim" in Pacific's policy required Pacific to insure separately the claim brought by Mr. Cross; (2) that there were three separate insurance limits rather than two; and (3) that under the applicable policy limits, Pacific was obligated to pay an additional $200,000 policy limit covering the claim of Mr. Cross. This appeal by Pacific and Chubb followed.

**2.** *Chicago Insurance Co. v. Pacific Indemnity Co.*, 502 F.Supp. 725 (D.Md.1980), was decided in 1980. In that case, a primary insurer under a professional liability insurance policy and an excess insurer disputed the meaning of a coverage provision in the former's policy. The court held for the excess insurer and stated that:

Having determined that Coverage B is available, the next question to be answered concerns the limits of that Coverage....

. . . .

The only case which this Court has found and which addresses the issue here is *Rodriguez v. Maryland Cas. Co.*, 369 F.Supp. 1144 (D.P.R.1971). In that case, the court held that eleven separate claims resulted when a hospital's negligence led to the death of a woman who left a husband and ten children. This Court would agree with the conclusion of *Rodriguez*.

*Id.* at 728–29. It is that statement which spawned the present dispute.

We conclude that the issue of the construction of Pacific's policy, which was executed and covers a liability in Maryland, is a proper subject for certification. The two standard texts on insurance law make the distinction that the policy limitation on coverage for injury to a single person applies to the person injured, and not to the persons suffering loss. 8A J. Appleman, *Insurance Law & Practice* § 4893 (1961); 15 A.G. Couch, *Cyclopedia of Insurance Law* § 56:47 (2d ed. 1983). Interstate agrees that this rule governs where the policy provides separate limits of liability for "bodily injury"; however, Interstate contends that the rule does not apply in this case because the broader word "injury" was used rather than the qualified words "bodily injury." Pacific responds that whether the policy covers "bodily injury" or the more general term "injury" is irrelevant, because the issue here is not the scope of coverage, but the number of policy limits applicable to a claim within that coverage. We conclude that the issue presented is strictly a question of the proper construction of Pacific's policy under Maryland law on which there appears to be no controlling precedent.

## II.

Accordingly, we certify the following question to the Maryland Court of Appeals:

Construing Pacific's policy under Maryland law, is Pacific liable to pay a separate $200,000 policy limit to Interstate for the claim of George M. Cross, Sr. for the financial injury sustained by him as a result of the insured's alleged malpractice?

This opinion shall constitute the statement of relevant facts required by the Maryland certification procedure, Md.Cts. & Jud.Pro.Code Ann. § 12–603 (1984 Replacement Vol.).

To afford counsel the opportunity to comment upon both our statement of the relevant facts and the proposed question prior to certification and to suggest modifications thereto, the formal certification order will be stayed for fourteen days from the filing of this opinion. Any comments or suggestions filed by counsel within this time period will be taken under advisement and the facts and the questions will be modified as we deem proper. Our formal order of certification will provide that all fees and costs in the Maryland Court of Appeals shall be equally divided among the parties.

AN ORDER WILL ISSUE.