488 A.2d 486

The PACIFIC INDEMNITY COMPANY and Chubb & Son, Incorporated

v.

INTERSTATE FIRE & CASUALTY COMPANY.

Misc. No. 6, Sept. Term, 1984.

Court of Appeals of Maryland.

Feb. 25, 1985.

Kieron F. Quinn, Baltimore (Patrick K. Cameron, Ober, Kaler, Grimes & Shriver, Baltimore, on brief), for appellants.

E. Dale Adkins III, Baltimore (Ward B. Coe, Jr., Anderson Coe & King, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

RODOWSKY, Judge.

This case comes to us from the United States Court of Appeals for the Fourth Circuit pursuant to the Maryland Uniform Certification of Questions of Law Act, Md.Code (1974, 1984 Repl.Vol.), §§ 12–601 to –609 of the Courts and Judicial Proceedings Article. The dispute is between the

primary and excess medical malpractice insurers of an obstetrician. The question is whether the causes of action of a brain-damaged infant for personal injuries and of the infant's father for consequential expenses are subject to but one, or to two separate, limit(s) of liability under the primary policy.

The primary carrier is the Pacific Indemnity Company (Pacific), which was a defendant in the United States District Court for the District of Maryland in the action giving rise to the proceeding before us.[1] The excess insurer is Interstate Fire & Casualty Company (Interstate), which was the plaintiff in the United States District Court. Their insured was Dr. Vibhakar J. Mody (Dr. Mody). On September 14, 1979, a statement of claim was filed in the Health Claims Arbitration Office of Maryland against certain health care providers, including Dr. Mody. The claimants were an infant, George M. Cross, Jr. (George Jr.), and his parents, George M. Cross, Sr. (George Sr.) and Barbara Ann Cross (Barbara Ann). Each claimant alleged negligence by Dr. Mody in rendering obstetrical services. Money awards were claimed on behalf of George Jr. for brain damage, by George Sr. for the past and prospective expenses of George Jr. consequential to the brain damage, and by Barbara Ann for a tearing of the vaginal and perineal areas. The two insurers settled these claims by a total payment of $560,-500. As allocated between claimants the settlement is $350,000 on the infant's claim, $200,000 on the father's claim, and $10,500 on the mother's claim.

We are concerned with the $200,000 allocated to George Sr. which Interstate supplied for the total settlement. Interstate now claims that $200,000 from Pacific in the federal litigation on the theory that it was the primary carrier's obligation to pay it.

---

1. Chubb & Son, Incorporated, a New York corporation, described in the federal complaint as "the agent, manager and representative of the Defendant, Pacific, in Maryland," was also joined as a defendant and is an appellant before the Fourth Circuit. No distinction is made in the certified question, however, between Pacific and its alleged agent.

The "Limits of Liability" section of the declaration sheet of Pacific's policy provides: "$200,000 each claim $600,000 aggregate." Pacific's position is that "each claim" for policy limit purposes is not synonymous with a cause of action in legal theory for presenting a claim in a common law action in a Maryland court. Pacific says that one $200,000 limit applies to Barbara Ann's claim and another $200,000 limit applies to the infant's claim which, for purposes of limits under the policy provisions, includes the derivative claim of George Sr. Interstate's position is that three separate $200,000 limits are implicated with one limit applying to the claims of father, mother, and child respectively.

The United States District Court for the District of Maryland concluded that Pacific's policy was unambiguous and entered summary judgment in favor of Interstate for $200,-000. *Interstate Fire & Cas. Co. v. Pacific Indem. Co.*, 568 F.Supp. 633 (D.Md.1983). Pacific's appeal resulted in transmittal of the certified question to us. *Interstate Fire & Cas. Co. v. Pacific Indem. Co.*, 738 F.2d 638 (4th Cir.1984). That question is:

> Construing Pacific's policy under Maryland law, is Pacific liable to pay a separate $200,000 policy limit to Interstate for the claim of George M. Cross, Sr. for the financial injury sustained by him as a result of the insured's alleged malpractice?

In responding to this question we shall first state the principles applied under Maryland law to the construction of insurance contracts. They are by no means unique to this state. We shall then apply those principles to Pacific's policy. As will be seen, that application does not produce a categorical answer to the certified question. In order to comply with the spirit of the Maryland Uniform Certification of Questions of Law Act under these circumstances, we shall then explicate how this Court would decide an appeal from a Maryland circuit court which presented the certified question on the same record which was made in the federal district court.

(1)

Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. *Bond v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 289 Md. 379, 424 A.2d 765 (1981); *National Grange Mut. Ins. Co. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979); *Travelers Ins. Co. v. Benton*, 278 Md. 542, 365 A.2d 1000 (1976). To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. *Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346 (1977); *Federal Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 341 A.2d 399 (1975); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Bierman*, 266 Md. 420, 292 A.2d 674 (1972); *Mills v. Judd*, 256 Md. 144, 259 A.2d 267 (1969); *Simkins Industries, Inc. v. Lexington Ins. Co.*, 42 Md.App. 396, 401 A.2d 181, *cert. denied*, 285 Md. 730 (1979). Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution. *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967); *First Nat'l Bank v. Maryland Cas. Co.*, 142 Md. 454, 121 A. 379 (1923); *United States Fire Ins. Co. v. Maryland Cas. Co.*, 52 Md.App. 269, 447 A.2d 896 (1982).

In so doing, we accord words their ordinary and accepted meanings. The test is what meaning a reasonably prudent layperson would attach to the term. This Court has consulted *Webster's Dictionary*, *Random House Dictionary*, or, less often, *Black's Law Dictionary*. *See, e.g., DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 475 A.2d 454 (1984) ("use of a motorcycle"); *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981) ("occurrence"); *Fisher v. Tyler*, 284 Md. 100, 394 A.2d 1199 (1978) ("loan" and "used under contract in behalf of"); *Aragona, supra*, ("any dishonest, fraudulent, criminal

... act ... of ... partner"); *C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.*, 264 Md. 510, 287 A.2d 238 (1972) ("loss caused by infidelity of an ... employee"); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970) ("collapse") and cases cited therein; *Hurt v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 175 Md. 403, 2 A.2d 402 (1938) ("damages").

■ In the first instance the inquiry is confined to analysis of the language used. *Truck Ins. Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 418 A.2d 1187 (1980); *Benton, supra; Levy v. American Mut. Liab. Ins. Co.*, 195 Md. 537, 73 A.2d 892 (1950). Courts may construe unambiguous contracts as a matter of law. *Aragona; C & H Plumbing; DeJames*, all *supra*.

■ The language used may be ambiguous if it is "general" and may suggest two meanings to a reasonably prudent layperson. *Pryseski, supra; Truck Ins. Exchange, supra*. If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage. *Pryseski, supra; Truck Ins. Exchange, supra; Planters Mut. Ins. Co. v. Deford*, 38 Md. 382 (1873); *Baltimore Fire Ins. Co. v. Loney*, 20 Md. 20 (1863). Construction of the contract by the parties to it before the controversy arises is an important aid to interpretation of uncertain terms. *Hurt, supra*.

■ If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury. The court may construe an ambiguous contract if there is no factual dispute in the evidence. *Truck Ins. Exchange, supra*.

A sampling of contract terms found ambiguous includes *Pryseski, supra*, 292 Md. at 196–98, 438 A.2d at 287–88 (meaning of "occurrence"); *Truck Ins. Exchange, supra*, 288 Md. at 433, 418 A.2d at 1190 (meaning of "operate under his Thrifty Rent-A-Car franchise"); and *DeJames*,

*supra,* 256 Md. at 719–25, 261 A.2d at 749–52 (meaning of "collapse").

Illustrative of contract terms found unambiguous are *DeJarnette, supra,* 299 Md. at 714–22, 475 A.2d at 457–61 (meaning of "use of a motorcycle"); *Fisher, supra,* 284 Md. at 110–12, 394 A.2d at 1204–06 (meaning of "loan"); *Aragona, supra,* 281 Md. at 374–75, 378 A.2d at 1348–49 (meaning of "any dishonest, fraudulent, criminal ... act ... of ... partner"); *Benton, supra,* 278 Md. at 544–46, 365 A.2d at 1003–04 ("[n]o person may recover benefits as prescribed by law and afforded under this insurance from more than one motor vehicle liability insurance policy on either a duplicative or supplemental basis"); and *C & H Plumbing, supra,* 264 Md. at 513–17, 287 A.2d at 239–42 (meaning of "loss by infidelity of an ... employee").

(2)

The printed heading on Pacific's policy is: "Obstetricians' and Gynecologists' Professional Liability and Professional Premises Liability Policy." As the policy form is designed, Part I provides coverage for professional services liability, while Part II would afford professional premises liability coverage. The declarations indicate that Dr. Mody did not purchase Part II coverage. With respect to Part I the declarations reflect that Dr. Mody had "Individual Coverage" as opposed to "Partnership Coverage" or "Corporation Coverage." The dollar amounts for "each claim" and "aggregate" were typed in the preprinted limits of liability portion of the declarations. By preprinted declaration Dr. Mody represented that he was "engaged in practice as an OBSTETRICIAN/GYNECOLOGIST."

We reproduce below the relevant provisions from Part I. Words which Interstate emphasizes are reproduced in italics and words which Pacific emphasizes are underlined.

    In consideration of the payment of the premium, in reliance upon the statements in the declarations made a

part hereof and subject to all of the terms of this policy, the company agrees with the named insured as follows:

\* \* \* \* \* \*

## I. COVERAGE AGREEMENTS

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

> COVERAGE A—INDIVIDUAL PROFESSIONAL LIA-BILITY
>
> *Injury* arising out of the rendering of or failure to render, during the policy period, professional services by the individual insured ... performed in the practice of the individual insured's profession described in the declarations including service by the individual insured as a member of a formal accreditation or similar professional board or committee of a hospital or professional society[.]

. . . .

## IV. LIMITS OF LIABILITY

. . . .

[T]he liability of the company for damages because of *injury* to which this insurance applies, sustained by any one person, shall not exceed the limit of liability stated in Part I of the declarations as applicable to each claim.

In addition, the limit of the company's liability under Part I for all damages shall not exceed the limit of liability stated in Part I of the declarations as 'aggregate.'

## V. DEFINITIONS

When used in reference to this insurance: damages means all damages, including damages for death, which are payable because of *injury* to which this insurance applies, and *injury* includes libel, slander, defamation of character or invasion of rights of privacy;

each claim means all claims or suits brought on account of *injury* sustained by any one person.

Interstate argues that the policy does not expressly limit "injury" to bodily injury and that "injury" literally em-

braces the economic injury suffered by George Sr. The district court agreed. It "concluded that no ambiguity exist[ed] in connection with the interpretation of [the] policy," 568 F.Supp. at 638, after having said:

> The word "injury" has been defined as "the invasion of any legally protected interest of another," *Restatement (Second) of Torts*, § 7 (1965), and as "Any wrong or damage done to another, either in his person, rights, reputation or property." Black's Law Dictionary (4th ed. 1951). [568 F.Supp. at 637–38.]

■ Nothing expressed in Pacific's policy contradicts an interpretation under which "injury" carries a meaning identical to its Restatement usage. If one assumes Interstate's reading, the economic injury of George Sr. falls within Coverage A because, under Maryland law, the subject invasion of George Sr.'s economic interest gives rise to a cause of action in George Sr. in addition to the action of George Jr. *See Meyers v. Meagher*, 277 Md. 128, 352 A.2d 827 (1976); *Hudson v. Hudson*, 226 Md. 521, 174 A.2d 339 (1961). On the same assumption, the father's loss becomes an "injury to which this insurance applies" within ¶ IV and the loss thereby is subject only to the "each claim" limitation. That limitation is itself defined in ¶ V in terms of "injury." Consequently the father's economic loss is an "injury sustained by any one person" and triggers a separate $200,000 limit.

The foregoing exercise demonstrates that Pacific's policy is drafted in a circular fashion. "Injury" is not a fully defined term in the policy ("injury includes libel, slander, defamation of character or invasion of rights of privacy"). Consequently the reader must enter the circle carrying a concept or definition of injury from a source outside of the words used. The district court entered the circle carrying definitions from the Restatement and Black's Law Dictionary. Once that assumption is made the reader may go around and around the circle without encountering any linguistic obstacle to the use of the extraneously derived concept of "injury."

In terms of the policy's partial (*i.e.*, "includes") definition of "injury" the meaning ascribed to "injury" by the district court is not illogical. A genus as broad as invasion of any legally protected interest necessarily subsumes the species of invasion known as libel, slander, defamation, or invasion of privacy.

Pacific on the other hand emphasizes that the certified question deals with policy limits and not with coverage. Under ¶ IV the $200,000 "each claim" limit applies to "damages because of injury to which this insurance applies, sustained by any one person...." Because the policy covers injury arising out of rendering obstetrical/gynecological service, Pacific sees the "injury to which this insurance applies" as bodily injury suffered by a person subjected to medical malpractice by the insured. There are two such persons in the instant case, George Jr. and Barbara Ann. Limits on the father's claim, says Pacific, are governed by the ¶ V definition under which "each claim" means "all claims or suits brought on account of injury sustained by any one person." Pacific's more narrow reading of "injury" attaches the father's claim, which is factually dependent on the injury to his son, to the son's claim when applying the $200,000 "each claim" limit on damages payable "on account of injury sustained by any one person." Because that "one person" is George Jr., as to George Sr.'s claim, Pacific says only one $200,000 limit applies to both claims.

One of the difficulties which we encounter with Pacific's argument, and with the district court's rejection of that argument, is that neither undertakes to analyze the meaning of "injury" in relation to all of the policy language. The analysis has been limited to the portions of the insuring agreement which are pertinent to coverage of the kind of claims presented here. A shorthand characterization of Pacific's argument is that "person" should be read as "patient" and "injury" should be read as "bodily injury" or "personal injury." On this aspect the district court said: "Had the intention been to restrict the policy limits to a claim asserted on behalf of a patient for personal injury, the

more precise terms would certainly have been used." 568 F.Supp. at 637. In our view that reasoning might apply if Coverage A embraced only "[i]njury arising out of the rendering of ... professional services ... performed in the practice of the individual insured's profession described in the declarations," *i.e.,* "practice as an OBSTETRI-CIAN/GYNECOLOGIST." Coverage A, however, contin-. ues with the words, "including service by the individual insured as a member of a formal accreditation or similar professional board or committee of a hospital or professional society."

From the standpoint of the policy as a whole, this apparently expanded definition of the practice of obstetrics/gynecology clearly meshes with the definition of "injury" in ¶ V, namely, "[w]hen used in reference to this insurance ... injury includes libel, slander, defamation of character or invasion of rights of privacy." Consequently this policy also insures the individual obstetrician/gynecologist when acting as a member of a professional board or committee against liability for defamation or invasion of privacy. Patients would not ordinarily assert such claims. They would likely be asserted by other medical professionals. Further, defamation and invasion of privacy claims are not personal injury claims, at least in the bodily injury sense. Given the mixture of coverages for the individual obstetrician/gynecologist under Coverage A, the person drafting Pacific's policy could not use "patient" in lieu of "person" without contradicting Coverage A's application to service on professional committees and without contradicting that part of the definition of "injury" which includes invasion of privacy and defamation. Further, while the policy might have expressly employed the term "bodily injury" for "injury," the policy's author would still have been required to enlarge the meaning of "bodily injury" by artificial definition so as to cover the injuries intended to be covered by having provided that "professional services" embrace work on professional committees.

The role which the partial definition of "injury" necessarily plays under the respective versions has been given little attention in the briefs. Under Interstate's concept of "injury" as an invasion of any legally protected interest which causes actual harm, each person who has a cause of action arising out of covered activity by an obstetrician/gynecologist is a person who has suffered an "injury." Seemingly this could include the personal representative who seeks funeral expenses, the relative who sues for solatium damages because of wrongful death, the dependent relative who sues for lost support because of wrongful death, the spouse who sues for loss of consortium in states which allow one spouse to sue alone for that loss, and, in states in which a husband is liable for necessaries for his wife, or in which one spouse is liable for the necessaries of another, a spouse's action for consequential expenses for necessaries. This reading makes the policy's partial definition of "injury" surplusage. The enumerated torts which "injury includes" are merely selected illustrations which also could have included trespass *q.c.f.* because all are invasions of legally protected interests.

Under Pacific's version the "damages" and "injury" definitions would more precisely read:

> When used in reference to this insurance: damages means all damages, including damages for death, which are payable because of [bodily] injury to which this insurance applies, and [bodily] injury includes [*i.e.,* in addition means] libel, slander, defamation of character or invasion of rights of privacy[.]

In order to maintain consistency with the policy language, while nevertheless presenting an interpretation which does not reach the high plateau of generalization for "injury" which Interstate advances, the result sought by Pacific requires interpreting the partial definition of "injury" as if it in effect said:

> [A]nd for purposes of this Part I read "injury," which in the context of medical malpractice liability usually means "bodily injury," also to include libel, slander, defamation

of character or invasion of rights of privacy, because of the expanded definition of professional services found in Coverage A hereof.

In other words, Pacific would have "includes" in the ¶ V definition of "injury" enlarge "[bodily] injury" while Interstate sees the list of torts following "includes" as merely subsets illustrating the larger set, "invasion."

In *Group Health Ass'n v. Blumenthal,* 295 Md. 104, 111, 453 A.2d 1198, 1203 (1983), we said that "[o]rdinarily the word 'including' means comprising by illustration and not by way of limitation." The context was an interpretation of Md.Code (1974, 1980 Repl.Vol.), § 3–2A–02(a) of the Courts and Judicial Proceedings Article, which is part of the Health Care Malpractice Claims Act. It subjects to mandatory arbitration "[a]ll claims, suits, and actions, including cross claims, third-party claims, and [wrongful death actions], by a person against a health care provider for medical injury...."

While "include" or "including" may introduce illustrations of a general term, the words also may signal an expansion in meaning of previous language. *Group Health Ass'n* gave a *"[s]ee also"* reference to Md.Code (1982), § 1–101(e) of the Health-General Article. The revisor's note to that section states:

This subsection is new language added to state expressly that the words "includes" or "including" are used in this article by way of illustration *or expansion* and not by way of limitation or restriction. [Emphasis added.]

The Code Revision Commission has appended identical notes to Md.Code (1977), § 1–101(e) of the Transportation Article; Md.Code (1980), § 1–101(i) of the Financial Institutions Article; Md.Code (1981), § 1–101(f) of the Health Occupations Article; Md.Code (1982), § 1–101(e) of the Health-Environmental Article; Md.Code (1984), § 1–101(c) of the State Government Article; and Md.Code (1984), § 1–101(c) of the Family Law Article.

Similarly, when an Act of Congress directed the Veterans Administrator to "include" in converted policies of U.S. Government life insurance a provision for waiver of premiums when the veteran was totally disabled, the United States Court of Appeals for the District of Columbia said that "there can be no doubt that the language of this section authorized and directed the Administrator to write an additional total disability provision which was confined, contained, inclosed, comprehended, and embraced as a component part, in the converted policy of insurance...." *United States ex rel. Lyons v. Hines*, 103 F.2d 737, 740 (D.C.Cir.1939).

*Black's Law Dictionary* (5th ed. 1979) defines "include" as

> [t]o confine within, hold as in an inclosure, take in, attain, shut up, contain, inclose, comprise, comprehend, embrace, involve. Term may, according to context, express an enlargement and have the meaning of *and* or *in addition to*, or merely specify a particular thing already included within general words theretofore used. "Including" within statute is interpreted as a word of enlargement or of illustrative application as well as a word of limitation. [Emphasis in original.]

*And see* the definitions of "include" in 3 *Stroud's Judicial Dictionary of Words and Phrases* (J. James 4th ed. 1973) and in 3 *Words and Phrases Legally Defined* (J. Saunders 2d ed. 1969), both published in England.

An examination of the policy to see if forms of the verb "to include" are elsewhere used consistently in one sense or the other is of little assistance in interpreting this policy. Coverage A speaks of "professional services ... performed in the practice of the individual insured's profession described in the declarations including service ... as a member of a ... professional board or committee...." The declarations state that Dr. Mody was "engaged in practice as an OBSTETRICIAN/GYNECOLOGIST." There we read "including" to enlarge the context's ordinary meaning of "professional services." The Superior Court of Pennsylvania,

however, has read an apparently identical policy provision to employ "including" for illustration only. *Danyo v. Argonaut Ins. Co.*, 318 Pa.Super. 28, 464 A.2d 501 (1983). Dr. Danyo sued his insurer for failure to defend a damage suit brought against him on behalf of the personal injury lawyer for one of Danyo's patients. The lawyer claimed loss of a fee because Danyo did not furnish a medical report or testify. Responding to the insurer's argument that the claim did not arise out of rendering "professional services," the court said:

> Moreover, by using the word "including" in referring to service on boards or committees as professional services, the policy implies the existence of a range of other services, not enumerated, which fall within the policy's coverage. [*Id.* at 31, 464 A.2d at 502.]

Finding the language ambiguous, the court construed it liberally in favor of the insured.

"[I]ncluding" also appears in the definition—"damages means all damages, including damages for death...." One would think that death is the most extreme form of injury imaginable, yet policy language reflected in reported decisions has spoken of "bodily injury or death," *see Perkins v. Fireman's Fund Indem. Co.*, 44 Cal.App.2d 427, 112 P.2d 670 (1941); *In re Employers' Liab. Assur. Corp.*, 180 La. 406, 156 So. 447 (1934); *Gaines v. Standard Acc. Ins. Co.*, 32 So.2d 633 (La.Ct.App.1947); *Lumbermen's Mut. Cas. Co. v. McCarthy*, 90 N.H. 320, 8 A.2d 750 (1939); *Brustein v. New Amsterdam Cas. Co.*, 255 N.Y. 137, 174 N.E. 304 (1931), as if the reference to death were needed because of the limited meaning of "injury." Other policies reflected in reports of decisions speak of *bodily* injury, "including death." *See Valdez v. Interinsurance Exchange*, 246 Cal. App.2d 1, 54 Cal.Rptr. 906 (1966); *Holtz v. Mutual Service Cas. Co.*, 264 Minn. 121, 117 N.W.2d 767 (1962); *Napier v. Banks*, 9 Ohio App.2d 265, 224 N.E.2d 158 (1967); *Bernat v. Socke*, 180 Pa.Super. 512, 118 A.2d 253 (1955). This use of "including" may represent the same effort at enlargement as the use of "or" does in "bodily injury or death."

Of course, in the partial definition of "injury," the meaning of "includes" is influenced by the meaning attributed to "injury," when it is "injury" we seek to define by discerning the meaning of "includes."

Pacific's interpretation also requires implying "bodily" as a modifier of "injury." Implying that modifier is not beyond the contract interpretation process where the context makes the "bodily" meaning of "injury" sufficiently clear. *Ravenswood Hospital v. Maryland Cas. Co.*, 280 Ill. 103, 117 N.E. 485 (1917) is illustrative. The issue was whether, under a hospital's liability policy, a husband's claim for loss on account of injuries to his wife and his wife's claim for bodily injuries were subject to a single limit which applied to "injury to or the death of one person." Without ever using the word "bodily" the court necessarily read "injury" to mean "bodily injury." It said:

> As to the further contention that appellee was entitled to be reimbursed for the $75 paid to the husband of Mrs. Appel, by the terms of the policy the liability for damages on account of injuries or death was limited to $5000 for each person, and the total liability assumed, in any event, was not to exceed $10,000, irrespective of the number of persons injured. The language of the policy is, "damages on account of injury to or the death of one person is limited to $5000 and subject to the same limit for each person." This language is too plain and clear to leave any doubt as to its meaning. It specifically limits appellant's liability to $5000 for injury or death to one person, irrespective of the number of persons who may make claim to damages on account of the injury to such person. In this case but one person was injured,—Mrs. Appel,— and under the conditions of the policy the appellant's liability was limited to $5000 on account of such injury. For this reason we think the Appellate Court was right in refusing to allow appellee's claim for such item. [280 Ill. at 109, 117 N.E. at 487–88.]

*And see Chattanooga Dayton Bus Line v. Burney,* 160 Tenn. (7 Smith) 294, 23 S.W.2d 669 (1929).

■ Just as we walked through the policy using Interstate's construction of "injury," we can walk through the policy implying "bodily" before injury and reading "includes" in the definition of "injury" as "in addition means." We again find no contradictions. George Jr.'s brain damage is the "[bodily] injury" arising out of the rendering of obstetrical service within Coverage A in ¶ I. George Sr.'s economic loss is nevertheless payable under the policy, subject to applicable limits, because Pacific has promised to pay "all sums which the insured shall become legally obligated to pay as damages because of ... [i]njury...." Under Maryland law the insured is obligated to the father for damages incurred because of the son's bodily injury. As between the infant and the father, the infant is the "one person" who has sustained an "injury to which this insurance applies" within the meaning of ¶ IV. The ¶ IV definition of "each claim" then closes the circle as drawn by Pacific. George Sr.'s claim and George Jr.'s claim are both "brought on account of injury sustained by any one person," *i.e.*, George Jr. As a result there is no separate limit for the father's claim.

■ The instant policy, on the basis of the words used, considered in their context, is not sufficiently clear to enable us to say that either Pacific's or Interstate's interpretation is the one intended. Using the standard of a reasonable layperson each party advances a reasonable interpretation. What we said in *Hearst Corp. v. Hughes*, 297 Md. 112, 118, 466 A.2d 486, 489 (1983) is also appropriate to the problem here:

> Unfortunately terms like "injury," "actual injury," "damage" and "harm" are used in different decisions, and often within the same decision, to represent different concepts.

At the first level of analysis of Pacific's policy, we are unable to answer the certified question because the words "injury" and, in the definition of "injury," "includes" are ambiguous.

(2)

At the next level of analysis we look to judicial construction. We recently repeated the rule in *Fisher v. Tyler, supra*, 284 Md. at 106–07, 394 A.2d at 1203 (quoting *Stanley v. American Motorist Ins. Co.*, 195 Md. 180, 188, 73 A.2d 1, 4 (1950)):

> [T]he application of this policy provision in a factual posture similar to that presented here has been before the courts of our sister states. The decisions of these jurisdictions have special significance in this context because heretofore this Court has recognized that "like a state which adopts, by copying, a foreign statute, ... parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states." ... In other words, while the contract term on its face may be ambiguous, which under other circumstances would ordinarily generate a jury question ..., the court in this situation may treat the term as unambiguous and, absent any factual dispute, adopt, as a matter of law, that construction placed on the language by the courts of other states. [Citations omitted.]

The above-quoted rule has no application here.

Each party derives comfort from one of two decisions in litigation between Pacific, as primary carrier, and an excess carrier which is part of the same group of companies of which Interstate is a member. Those cases involved a different Pacific policy, its "Physicians', Surgeons', and Dentists' Professional Liability Policy." Interstate is partial to *Chicago Ins. Co. v. Pacific Indem. Co.*, 502 F.Supp. 725 (D.Md.1980), which the parties to this case call *Chicago I.* It is a decision by United States District Judge Alexander Harvey, II, who decided the subject case in the federal district court. In his opinion in the case *sub judice* Judge Harvey did not consider *Chicago I* to have precedential value and we agree. He pointed out that the policy in *Chicago I* did not include the definition of "each claim," 568

F.Supp. at 635, to which we would add that the policy in *Chicago I* did not contain a partial definition of "injury." Nevertheless, *Chicago I* did treat the claims of a mother, infant, and father which were like those asserted here as three separate claims under a limits of liability provision which in relevant part provided that "the limit of liability stated in the declarations as applicable to 'each claim' is the limit of the company's liability for all damages on account of each claim or suit covered hereby...."

Pacific is partial to *Chicago Ins. Co. v. Pacific Indem. Co.*, 566 F.Supp. 954 (E.D.Pa.1982), *aff'd*, 720 F.2d 660 (3rd Cir.1983), called by the present parties *Chicago II.* There the district court said that

> [t]he law of Pennsylvania, like the law of other jurisdictions, is very clear that derivative claims do not constitute separate claims for purposes of applying policy limitations or deductibles in automobile liability insurance policies. Admittedly, the language of such policies differs from the language of Pacific's policy, but the reasoning of the courts lends support for a similar result here. [*Id.* at 958.]

Further:

> In my view, the factor which determines the limits of liability under a medical malpractice insurance policy is the number of patients injured by the alleged malpractice, and not the number of persons adversely affected as a result of the patient's injury. [*Id.* at 960.]

In our view the weight to be accorded the reasoning in *Chicago II* is weakened because Coverage A, there involved, covered claims for "injury" arising both from conventional medical malpractice liability and also from liability arising out of professional service on professional committees.[2]

---

2. The parties have furnished the entire policy involved in *Chicago I* and *Chicago II.* In that policy Coverage A reads:

*Danyo, supra,* also discussed the meaning of "injury" in a coverage section like Coverage A here. The court concluded that the policy was ambiguous with respect to whether the lawyer plaintiff has suffered covered injury, so that the insurer was held wrongfully to have declined to defend.

Those cases do not represent either the extent or degree of unanimity of opinion which would enable us to conclude that a relatively settled judicial construction of otherwise apparently ambiguous words has removed the ambiguity.

Pacific cites many cases which reach a result consistent with the result it seeks, but Interstate correctly points out that those cases involve policy language which is different from that before us. Most of those cases involve other kinds of coverage in which the limit of liability is expressly in terms of bodily injury to one person.[3] Accordingly, at

---

Coverage A—Individual Coverage: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury arising out of:

(a) malpractice, error or mistake of the insured, or of a person for whose acts or omissions the insured is legally responsible except as a member of a partnership, in rendering or failing to render professional services, or

(b) acts or omissions of the insured as a member of a formal accreditation or similar professional board or committee of a hospital or professional society,

committed during the policy period in the practice of the insured's profession described in the Declarations.

**3.** If "bodily" is properly to be implied as modifying "injury" in this policy, so that the "each claim" limit would be in terms of "[bodily] injury sustained by any one person," then the overwhelming majority of cases would apply only one liability limit to the bodily injury of the child and to the derivative claim of the parent combined. *See* Annot., 13 A.L.R.3d 1228 at § 4 (1967 & Supp.1984). "Bodily injury" cases denying a separate limit of liability to a parent seeking to recover for medical expenses or lost services include: *In re Employers' Liab. Assur. Corp.,* 180 La. 406, 156 So. 447 (1934); *Gaines v. Standard Acc. Ins. Co.,* 32 So.2d 633 (La.Ct.App.1947); *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817 (1977). *Cf. West American Ins. Co. v. Buchanan,* 11 Wash.App. 823, 525 P.2d 831 (1974) (parents seeking recovery for their grief not entitled to separate limit).

One Maryland case did not permit a spouse claiming "consequential damage" in the form of loss of consortium under a "bodily injury"

the level of analysis which looks to judicial interpretations of the relevant policy language, we conclude that the subject policy is ambiguous on the issue raised by the certified question.

### (3)

Where the meaning of a controlling term in a policy is ambiguous, "extrinsic evidence is admissible ... to show

---

policy to recover a separate limit of liability. *Travelers Indem. Co. v. Cornelson*, 272 Md. 48, 321 A.2d 149 (1974). For other similar cases, *see, e.g., Montgomery v. Farmers Ins. Group*, 585 F.Supp. 618 (S.D.Ind. 1984) (consortium); *Smith v. State Farm Mut. Auto. Ins. Co.*, 252 Ark. 57, 477 S.W.2d 186 (1972) (consortium); *Perkins v. Fireman's Fund Indem. Co.*, 44 Cal.App.2d 427, 112 P.2d 670 (1941) (services and medical expenses); *Oda v. Highway Ins. Co.*, 44 Ill.App.2d 235, 194 N.E.2d 489 (1963) (consortium); *Fish v. Martin*, 201 So.2d 341 (La.Ct. App.1967) (services and medical expenses); *Fetterly v. McNeely*, 77 So.2d 757 (La.Ct.App.1955) (medical expenses); *Saltzberg v. Lumbermens Mut. Cas. Co.*, 326 Mass. 351, 94 N.E.2d 269 (1950) (medical expenses); *Holtz v. Mutual Service Cas. Co.*, 264 Minn. 121, 117 N.W.2d 767 (1962) (medical expenses); *Wilson v. Capital Fire Ins. Co.*, 136 Neb. 435, 286 N.W. 331 (1939) (services and medical expenses); *Putnam v. Employers Liab. Assur. Corp.*, 90 N.H. 74, 4 A.2d 353 (1939) (expenses); *Williams v. State Farm Mut. Auto. Ins. Co.*, 99 N.J.Super. 377, 240 A.2d 38 (1968), *aff'd*, 104 N.J.Super. 403, 250 A.2d 155, *aff'd*, 54 N.J. 580, 258 A.2d 368 (1969) (services and medical expenses); *Brustein v. New Amsterdam Cas. Co.*, 255 N.Y. 137, 174 N.E. 304 (1931) (services); *Napier v. Banks*, 9 Ohio App.2d 265, 224 N.E.2d 158 (1967) (services, medical expenses, and consortium).

A number of "bodily injury" limitation of liability clauses contain express language to the effect that damage includes medical expenses, care, and loss of services. Various courts analyzing that language have held that a spouse or relative suffering such "consequential damage" cannot recover under an additional limit of liability. *See Wohlberg v. Hartford Acc. & Indem. Co.*, 262 F.Supp. 711 (D.Mont. 1967) (services and medical expenses); *United Services Auto. Ass'n v. Warner*, 64 Cal.App.3d 957, 135 Cal.Rptr. 34 (1976) (consortium); *New Amsterdam Cas. Co. v. Hart*, 153 Fla. 840, 16 So.2d 118 (1943) (services, medical expenses, and consortium); *State Farm Mut. Auto. Ins. Co. v. Hodges*, 221 Ga. 355, 144 S.E.2d 723 (1965) (consortium); *Gass v. Carducci*, 52 Ill.App.2d 394, 202 N.E.2d 73, *modified*, 52 Ill.App.2d 402a, 203 N.E.2d 289 (1964) (services and consortium); *Greenberg v. Medi-Cab, Inc.*, 114 Misc.2d 104, 451 N.Y.S.2d 335 (1982) (services); *Smith v. Cassida*, 403 Pa. 404, 169 A.2d 539 (1961) (services and medical expenses); *Yancey v. Utilities Ins. Co.*, 23 Tenn.App. 663, 137 S.W.2d 318 (1939) (services, medical expenses, and consortium); *Bulman v. Bulman*, 271 Wis. 286, 73 N.W.2d 599 (1955) (services and medical expenses).

the parties' intent and to show whether the term does or does not have a particular trade usage." *Pryseski, supra,* 292 Md. at 198, 438 A.2d at 288. If no party presents extrinsic evidence bearing upon the meaning of the ambiguous term, "we would normally apply the 'principle of contract construction that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party.'" *Id.* at 199, 438 A.2d at 288 (quoting *Truck Ins. Exchange, supra,* 288 Md. at 435, 418 A.2d at 1191).

In the summary judgment proceedings in the instant case, Pacific filed

affidavits and deposition testimony establishing that up until 1980 [the year of decision of *Chicago I*] the parties to this action and the insurance industry as a whole had regularly adjusted claims of the kind here involved by treating the parent's claim for expenses for care of the infant as part of the infant's damages and, therefore, part of the primary insurance limit applicable to the infant. [*Interstate v. Pacific, supra,* 738 F.2d at 640 (footnote omitted), the opinion certifying the subject question to us.]

In light of this evidence the next step in the interpretation process is to examine trade practice and the practical construction which parties affected by the meaning of the primary policy had placed upon it, particularly in the period prior to a controversy arising between them. Were this case to have come to us from a Maryland circuit court, we would determine the legal relevancy of the factual submission and whether any dispute of material fact existed. On a factual showing by Pacific as relevant and undisputed as is indicated by the opinion certifying the question, we would interpret the policy in accord with Pacific's position and hold that but one limit applied to the claims of father and son.

The certified question, however, does not ask us to undertake that review which would be beyond the Maryland Uniform Certification of Questions of Law Act. The briefs filed in the Fourth Circuit, which were used without change in this Court, reflect that Interstate makes legal and factual arguments against consideration of Pacific's factual submission. Those appellate issues are concerned with review of a summary judgment.

For all the foregoing reasons, we are unable categorically to answer the certified question.

CERTIFIED QUESTION ANSWERED AS ABOVE SET FORTH. COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.