LEVY ET AL. *v.* AMERICAN MUTUAL LIABILITY
INSURANCE COMPANY

[No. 197, October Term, 1949.]

*Decided June 8, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert E. Coughlan, Jr.,* with whom were *William Lovitt* and *Lord, Whip & Coughlan* on the brief, for the appellants.

*Roszel C. Thomsen* and *Edward A. Supplee,* with whom were *Clark, Thomsen & Smith* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit on an insurance policy brought by the appellants. A demurrer to the amended declaration was sustained by the trial court without leave to amend, and from a judgment in favor of the defendant for costs, the plaintiffs appealed.

The policy sued on is what is known as a comprehensive crime policy, covering dishonesty of employees, burglary, theft, safe burglary, inside robbery, kidnapping, outside robbery, paymasters' robbery, destruction of or damage to monies and securities, money orders and counterfeit

paper currency, forgery of issued instruments and forgery of accepted instruments. This suit is brought under Clause A covering dishonesty of employees. That clause reads "To indemnify the insured for all loss of property due to the fraud or dishonesty of any of the insured's employees, whether acting alone or in collusion with others." It is not contended in this case that the loss sued for was not occasioned by the fraud or dishonesty of an employee. The key word, however, of Coverage A is "property". The policy contains definitions of certain words whenever used in the policy. One of these definitions is of the word "property", which is said to be "Money, securities, merchandise, furnishings, fixtures, equipment or other personal property owned by the insured or held by the insured as pledgee, bailee, trustee, custodian, or agent, whether or not the insured is legally liable for the loss or damage thereof."

The facts alleged which it is contended render the appellee liable are these. The appellants are engaged in the business of selling shirts, uniforms, caps, etc. One of their full-time employees, who was on a straight salary basis, accepted an order for some uniform caps from a cab company, an established customer of the appellants. The appellants did not themselves manufacture these caps, and this employee placed the order with the appellant's regular source of supply. When they were ready, he had them billed to himself, took them to the cab company, received the money, paid the source of supply and retained the balance for his own use. Subsequently, he told the cab company that appellants could no longer supply them, but that he would, and later orders he had billed in his own name, and filled them in the same manner as he had in the first order. He then used this scheme as a pattern to divert to his own use other orders from other established customers of the appellants, by telling them that the appellants were no longer able to supply them, but that he could. The losses which the appellants claim, by reason of the diversion or appropriation of these contracts by their em-

ployee, amount to in excess of $13,500. It appears that the employee received a salary in 1945 of $2,189.90, in 1946 this was increased to $2,898, in 1947, $3,080, and in 1948, up to August, when his actions were discovered, he had received $2,054.

On these facts the appellants claim that they sustained a loss of property within the meaning of the policy. One theory is that they lost money which they would have received on the diverted contracts, or the personal property of the contracts themselves, and the other is that they lost the money they were paying the employee for his entire services during the period when the diversion occurred. It is not contended by the appellee that the actions of the employee were not fraudulent or dishonest, but it contends that no money or property owned by the insured was lost. The case, therefore, resolves itself into an inquiry what the definition of property in the policy means. Appellants urge that since the policy is a broad one, as indicated by its name, "Comprehensive Crime Policy", it was designed to fit all of the needs of people in business, and that it must, in the event of any doubt, be construed strictly against the insurance company. They cite in this connection, *Hospital for the Women of Maryland v. United States Fidelity & Guaranty Co.*, 177 Md. 615, 11 A. 2d 457, 128 A. L. R. 931, and *Maryland Casualty Co. v. Fowler*, 4 Cir., 31 F. 2d 881, 63 A. L. R. 1375. But a policy is a contract, and these cases do not change the general rule that in the normal interpretation of contracts, the effort of the court is to ascertain the intent of the parties from the words used. *Hart v. Hart*, 165 Md. 77, 80, 166 A. 414; *Norman v. Century Athletic Club*, 193 Md. 584, 69 A. 2d 466. The questions of interpretation against an insurer, and of abolition of the rule of *strictissimi juris* do not arise unless there is an ambiguity. *Southern Surety Co. v. MacMillan Company*, 10 Cir., 58 F. 2d 541.

It seems to be quite clear that, whether the word "profits" is used (as it was in the original declaration), or whether the word "proceeds" is used, as in the amend-

ed one before us, what was actually lost by the appellants was the profit they would have made had their employee not engaged in competition with them, or the prospective profit they would have had in the diverted contracts. The Insurance Company did not insure them against the loss of all kinds of property, intangible or otherwise, but only against the loss of money, certain specified kinds of personal property or evidences of personal property, and "other personal property". Under the doctrine of *ejusdem generis* the words "other personal property" must be construed to mean property of the same nature and description as the particular kinds of property mentioned, and not choses in action for unlawful or fraudulent competition. *Mayor and City Council of Baltimore v. Smith,* 168 Md. 458, 177 A. 903; *Smith v. Higinbothom,* 187 Md. 115, 129, 130, 48 A. 2d 754. This doctrine is applicable to contracts as well as to statutes, and has been applied to insurance policies. *E. H. Emery & Co. v. American Insurance Company,* 177 Iowa 4, 158 N. W. 748, 753. The insurance company did not insure the appellant against loss of profits. "* * * profits must be insured *eo nomine*". Couch, Cyclopedia of Insurance Law, Section 421; 4 Appleman, Insurance Law and Practices, § 2302, note 88.

The salary paid to the employee during the period of his employment was not lost. It was based upon the work he actually did for the appellants, which must have been acceptable to them, because he received an increase each year until his diversions were discovered. He was not paid his salary for these contracts which he diverted, because the appellants knew nothing about them. He was paid for what he actually did for them and if he breached his contract, appellants' right of action against him was not property lost within the meaning of the contract of insurance.

For the reasons stated the judgment must be affirmed.

*Judgment affirmed with costs.*