413 So.2d 1322 (1981)
The McCARTY CORPORATION
v.
INDUSTRIAL SCAFFOLDING, INC. and Insul-Contractors, Inc.
No. 14681.
Court of Appeal of Louisiana, First Circuit.
June 25, 1981.
Paul H. Spaht, Baton Rouge, for plaintiff-appellee The McCarty Corp.
Robert L. Picou, Jr., Houma, and Lemuel E. Hawsey, III, Baton Rouge, for defendants-appellants Industrial Scaffolding, Inc., and Inslu-Contractors, Inc.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
This is an action brought by The McCarty Corporation against a subcontractor, Industrial *1323 Scaffolding, Inc., and a corporation that is an alter ego of Industrial, Insul-Contractors, Inc.[1] (the two defendants being referred to collectively herein as ICI) for breach of contract. Defendants filed a reconventional demand. The trial court found the contract had been breached, as alleged, and awarded damages, denying the reconventional demand. The defendants appealed seeking to have the judgment amended to delete an item connected with the construction of the warehouse (which we find herein was not included in the trial court's award of damages) and also to delete 15% overhead awarded McCarty on certain items of damage. We affirm the judgment of the trial court without amendment.
The McCarty Corporation is an industrial insulation contractor engaged principally in the business of installing and/or applying insulation on large vessels, towers and stacks, some of which are often one or two hundred feet tall. In order to insulate a large vessel a scaffold must be erected around the vessel to serve as a work platform for the insulators. After the insulation work is completed, the scaffold is dismantled and removed.
Industrial Scaffolding, Inc. is a scaffolding contractor, engaged principally in the business of constructing and dismantling the scaffolding from which insulation contractors insulate these large industrial vessels, towers and stacks.
McCarty, as subcontractor, contracted to insulate towers for two projects on separate locations, one for Shell Oil Company and one for Murphy Oil Company. The general contractor on the Shell job was Pullman-Kellog. The general contractor on the Murphy job was the Early Corporation. McCarty received bids for the erection of scaffolding for both jobs, on which ICI was the successful bidder. The contract for the Shell job was amended as between McCarty and ICI to include the construction of a warehouse at a cost of $3,250.00. That sum was rather insignificant compared with the bid price of ICI on the two subcontracts, the scaffolding on the Shell job having a bid price of $135,585.00, and the scaffolding on the Murphy job having a bid price of $82,400.00. In any event, ICI was paid for the construction of the warehouse.
ICI commenced work on both projects, and although the Murphy project proceeded as anticipated, it encountered problems on the Shell job. ICI, however, concedes that the difficulties and delays it encountered on the Shell project "are of the sort often encountered on large construction projects." While the work it had contracted to perform was still substantially incomplete, ICI withdrew from both projects and refused to return. As a result McCarty was required to look to other sources for the scaffolding, and this litigation ensued. Extensive evidence was presented on the question of fault, and the trial court found that ICI had breached both contracts. On appeal ICI does not contest the trial court's determination that it was at fault, but contends that two items of damages were improperly awarded: (1) the award to McCarty of 15% overhead expense on certain portions of the damages it sustained, and (2) that the damages awarded McCarty included the cost of constructing a warehouse on the Shell job location.
We note at the outset that the trial court's computation did not include the cost of the warehouse as an item of damage. ICI is clearly in error in its contention that it was charged the cost of the warehouse in the award of damages, and we find its contention in this regard devoid of merit.
When ICI failed to complete either subcontract, McCarty obtained the services of Scaffolding Rental and Erection Service, Inc., to complete a portion on the Shell job and used its own work force to complete a portion of the same job. McCarty completed the Murphy job solely with its own work force. McCarty paid Scaffolding Rental and Erection $145,935.00 for its work on the Shell job, and incurred direct expenses of *1324 $107,321.00 in its completion of that job. McCarty incurred direct expenses of $121,166.71 in completing the Murphy job.
The trial court awarded 15% overhead or indirect expenses solely on the items of $107,321.00 and $121,166.71 incurred by McCarty on that work done solely by McCarty, itself. No overhead was awarded on the $145,935.00 paid Scaffolding Rental and Erection for its work toward completing the Shell job. The sole issue before us, now that the issue of the warehouse construction cost has been disposed of, is the question of the correctness of making an award for overhead or indirect expenses.
An undertaker who fails to do the work he has contracted to do is liable in damages for the losses that may ensue from his non-compliance. LSA-C.C. art. 2769. The general rule as to the measure of damages is the amount of the loss the creditor has sustained, or of the gain of which he has been deprived. LSA-C.C. art. 1934. The proper measure of damages in this case is the amount that will place McCarty in the same position as if the obligation of ICI under its scaffolding contract had been fulfilled. The testimony established that the overhead of The McCarty Corporation at that time averaged out at 15%, which is approximately the same as the average for the industry. ICI does not appear to object to the 15% as being too high, but contends that McCarty is not entitled under the law to an award for overhead or indirect expenses as an item of its damages. We disagree. As the record shows overhead or indirect expenses consists generally of the expenses of a business enterprise for salaries of executives, central office staff personnel, rent, communications, vehicles, utilities, interest on borrowed capital and numerous other expenses which are extremely necessary for the operation of the business, but which are not directly attributable to a particular construction job or project. Since it is practically impossible to accurately allocate the exact amount of indirect expense actually incurred on each job or project, the generally accepted practice is to determine what the proportionate amount of all indirect expenses is to the dollar volume of work performed or business done by the company, and then allocate these overhead or indirect expenses to each job or project. Overhead or indirect expenses are in fact an expense. They are as true a cost of doing business as are the direct costs. For these reasons, it is customary to make an award of overhead in both actions of breach of contract and tort actions to cover indirect expenses of the nature testified to in this case by Mr. McCarty, which are not reflected by a direct expense incurred in remedying the damage sustained, and such expenses need not be proved item by item. Al Smith's Plumbing & Heating Service, Inc. v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir. 1979); Smith v. Burden Construction Company, 379 So.2d 1135 (La. App. 2d Cir. 1980). Indeed, if we were to require an item by item proof of indirect expenses or overhead, we would be requiring the impossible for most business enterprises, and ruling out recovery of overhead, which is a portion of damages clearly permitted by our laws. Furthermore, if we were to rule out overhead in the present case, we would be interfering with the "much discretion" permitted the trial judge or jury in awarding damages by LSA-C.C. art. 1934. We, therefore, hold that overhead expenses of 15% were properly allowed in the present case.
Accordingly, the judgment of the trial court is affirmed, at defendants' cost.
AFFIRMED.
NOTES
[1] It was stipulated by the parties that Industrial Scaffolding, Inc., and Insul-Contractors, Inc. were alter egos for one another, and would be liable in solido for any sum awarded for breach of contract.