**DIVERSIFIED GROUP, INC.,**
**Plaintiff-Appellant,**

v.

**Charles VAN TASSEL, et al.,**
**Defendants,**

**The St. Paul Insurance Company,**
**Defendant-Appellee.**

**No. 86–3185.**

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1987.

Vance E. Ellefson, Larzelere, Ellefson & Pulver, Douglas B. Habig, New Orleans, La., for plaintiff-appellant.

Harvey C. Koch & Associates, Gary J. Rouse, New Orleans, La., for defendant-appellee.

Stephen K. Conroy, Metairie, La., for other interested party.

Before GEE, POLITZ, and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Diversified Group, Inc. and Marlex Terminals, Inc. (hereafter collectively DGI) appeal an adverse summary judgment based on the trial court's conclusion that their claims were not covered by the insurance policy issued by appellee St. Paul Insurance Company. For the reasons assigned, we affirm in part, reverse in part, and remand.

### Background

William Burgstiner and Charles Van Tassel were employed by DGI. Their duties included the preparation and submission of proposals to the United States Military Sealift Command for the furnishing of layberthing facilities for TAKR vessels on the East and Gulf coasts. Substantial time and work effort, with concomitant expenses, were involved. Surreptitiously, Burgstiner and Van Tassel, through their wholly-owned corporations, Sealift Terminals, Inc. and Texas Sealift Terminals, Inc., submitted proposals lower than those they had prepared and submitted on behalf of DGI. The bid by DGI was not successful. The bid by Burgstiner and Van Tassel resulted in a five-year contract for the berthing of two TAKR vessels at Jacksonville, Florida.

DGI filed suit against Burgstiner, Van Tassel, their two corporations, and various insurers, for its losses, principally including the loss of profits DGI would have received had it been awarded the government contract. The complaint alleged breach of fiduciary duty, fraud, usurpation of corporate opportunity, and RICO and antitrust causes of action.

St. Paul issued a Comprehensive Dishonesty, Disappearance and Destruction Policy to DGI. This "3–D" policy insured against

> loss of Money, Securities and other property which the Insured shall sustain ... directly from one or more fraudulent or dishonest acts ... [of employees].

The policy excluded

> Potential income, including but not limited to interest and dividends, not realized by the Insured because of a loss covered under this policy.

In granting St. Paul's motion for summary judgment, the district court ruled that DGI's claims for the profits lost as a consequence of the conduct of Burgstiner and Van Tassel were excludable as claims for "potential income." The claims for out-of-pocket expenses and diversion or misuse of corporate assets and resources were likewise dismissed, without express reasons being assigned, but apparently because the trial court found these either too inconsequential or not caused directly by the challenged conduct. After granting judgment to St. Paul under Fed.R.Civ.P. 56, the district court certified its judgment pursuant to Fed.R.Civ.P. 54(b). The question presented on appeal is whether the losses claimed by DGI are, as a matter of law, potential income within the meaning of the exclusionary language in the St. Paul policy. We conclude that the principal loss of future profits is excluded. We further conclude that the other claimed losses are not excluded.

### Summary Judgment

■ Under Fed.R.Civ.P. 56 summary judgment is appropriate where the facts are not in dispute and the issue before the court poses purely a legal question. Pretermitting the decision whether the defendants did that which they are accused of doing, we need only decide whether the alleged acts come within the protective ambit of the St. Paul 3–D policy. The construction of an insurance policy, like any contract, presents a question of law to be decided by the court. *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.),

*cert. denied sub nom. Aetna Cas. and Sur. Co. v. Porter*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (applying Louisiana law). Whether a policy is ambiguous, thereby requiring factual findings, is likewise a question for the court. We agree with the district court that the St. Paul policy is not ambiguous and that the scope of the potential income exclusion poses a question of law which the court properly may decide under Rule 56.

### Loss of Profits

■ It is apparent that the great majority of the damages claimed by DGI results from the loss of profits it contends it would have earned if Burgstiner and Van Tassel had not subverted the bid process, thus denying them the lucrative contract. St. Paul counters that any profits DGI lost were potential income and were not covered by the policy it issued.

We find scant authority construing this exclusion. The dearth of authority is perhaps explained in part by the fact that the potential income exclusion is a relative newcomer to the insurance scene. *See* Lentz, *Profit and the Potential Income Exclusion*, 19 Forum 694 (1984), for a helpful discussion which addresses, *inter alia*, the effect of the exclusion on claims for theft of corporate opportunity.

St. Paul invites our attention to an unpublished federal district court opinion in *United States Gypsum Co. v. Insurance Co. of North America*, No. 85 C 4704 (N.D. Ill.1986), in which the court denied coverage under this genus exclusion for future income losses resulting from an employee's theft of a product formula. We are aware of two other cases considering the potential income exclusion. The first offers no guidance to our present inquiry. *Bank of Huntingdon v. Smothers*, 626 S.W.2d 267 (Tenn.App.1981). The second offers some inferential assistance for it held that absent the potential income exclusion the insured could recover a lost profit item. *United Southern Bank of Sumner County v. Glens Falls Insurance Company*, 548 F.Supp. 355 (M.D.Tenn.1982).

In a case predating the advent of the potential income exclusion, we concluded that income losses resulting from the theft of corporate opportunity were covered by a policy protecting against the dishonest acts of employees. *Eagle Indemnity Co. v. Cherry*, 182 F.2d 298 (5th Cir.1950). This decision was followed by our Eighth Circuit colleagues in *Boston Securities, Inc. v. United Bonding Insurance Co.*, 441 F.2d 1302 (8th Cir.1971). The Supreme Court of Maryland reached a contrary conclusion in *Levy v. American Mutual Liability Insurance Co.*, 195 Md. 537, 73 A.2d 892 (1950).

In the cited article, Lentz notes the conflict between the *Eagle Indemnity* and *Boston Securities* cases and the *Levy* case, and predicted that if the contracts at issue in *Eagle Indemnity* and *Boston Securities* had contained the potential income exclusion that the courts would have found non-coverage. We now in part confirm Lentz's prognostication.

We are persuaded that the potential income exclusion is clear and unambiguous. It excludes coverage for the loss of future profits, or future income flow, resulting from the fraudulent or dishonest acts of employees. To conclude otherwise would be to distort the plain meaning of the words. St. Paul is not accountable to DGI, under the subject policy, for any income loss suffered by DGI as a consequence of the fraudulent or dishonest acts of its employees. The district court's judgment in that regard is affirmed.

### Misuse of Assets, Diversion of Resources

In addition to the loss of profits, DGI seeks recovery for other losses allegedly sustained, including funds used by Burgstiner and Van Tassel for travel, in furtherance of their scheme, the salaries they received for personally diverted time, telephone services, corporate facilities and overhead, secretarial assistance, and supplies attributable to their efforts on behalf of their competing enterprise. It may be that DGI will be unable to carry the burden of proof on some or all of these and perhaps other similar items of loss, but we are not prepared to say as a matter of law that such items are not covered by the St. Paul policy.

By its express terms the St. Paul policy covers the loss of "money ... and other property" caused "directly from one or more fraudulent or dishonest acts" of employees. Although minor when considered against the claim for lost profits, we are neither persuaded that these claimed losses are so inconsequential as to be unrecoverable nor that, as a matter of law, they do not result directly from the alleged acts of misconduct. We observe that overhead expenses, lost due to a compensable event, have been held recoverable. *LeBlanc v. Gibbens Pools, Inc.*, 447 So.2d 1195 (La. App.1984); *McCarty Corp. v. Industrial Scaffolding, Inc.*, 413 So.2d 1322 (La.App. 1981); *Freeport Sulphur Co. v. S/S HERMOSA*, 526 F.2d 300 (5th Cir.1976) (*see also* the district court opinion, 368 F.Supp. 952 (E.D.La.1973) (Rubin, J.)).

AFFIRMED in part, REVERSED in part, and REMANDED.