WICKER, Judge.
| ^Plaintiff, Magnolia Construction Company, Inc. (Magnolia), appeals an adverse judgment of the trial court that dismissed its action for breach of contract asserted against the Parish of St. Charles (Parish). The issue before the trial court was whether Magnolia was entitled to recover additional overhead damages from the Parish for delays on a public works contract. The trial court considered three change orders to the contract, and ultimately denied Magnolia’s claim. We affirm the judgment of the trial court.
Magnolia entered into a contract with the Parish to construct the Montz and Norco Pump Stations, to install 31,000 feet of 10" HDPE/PVC Force Main and 37,000 of 18" HDPE/PVC Force Main. The contract was effective on July 30, 1999 and provided that the project would be substantially complete “within three ^hundred thirty-five (335) calendar days after the date when the Contract Time commences to run.” The contract further provided that final acceptance for the work must be done by three hundred sixty-five days (365). The initial price for the work to be done under the contract was $4,150,992.00.
During the term of the project covered by the contract, the parties executed three change orders that are at issue in this appeal. The parties executed the first of the three change orders in April of 2000. That change order provided for a net increase of payment to Magnolia of $133,314.00. It also extended the time for completion by twenty (20) days. The second change order, which was executed in August of 2000, provided for a net increase to Magnolia of $171,085.61 and provided an additional seventy (70) days for completion. The “final adjustment of unit price, items, extra work and credits” was set forth in the third change order in March of 2001. That change order provided for a net decrease of $33,119.07 and an additional sixty (60) days for completion.
In July of 2001, Magnolia filed suit against the Parish for breach of contract, alleging that certain acts of the Parish prevented Magnolia from “performing the work in accordance with the orderly, progressive and sequential method and schedule for construction which formed the basis of Magnolia’s bid.... ” Magnolia further alleged it was “required to perform additional work and utilize additional materials, above and beyond those quantities originally estimated by Magnolia in the bid.” Magnolia asserts that it was not properly compensated for these additional expenses, and demanded a minimum of $237,129.00 plus interest.
The Parish asserted that Magnolia was compensated totally for its work in the original contract, and in the additional funds provided by the change orders.
After a trial on the merits, the trial court rendered a judgment with written reasons in favor of the Parish. The trial court ultimately found that the parties had Lsettled disputes regarding the additional compensation demanded by Magnolia with the three change orders. The trial court disagreed with Magnolia’s argument that it reserved its rights to claim indirect overhead expenses, and found that Magnolia “lost its right to bring further claims for *749 an increase in contract price and/or contract time when it entered into Change Order No. 1 and Change Order No. 2.” The trial court further found that language in Change Order No. 3 “bars any indirect overhead claim Magnolia may have had under Change Order No. 1 or Change Order No. 2.”
In brief to this Court, Magnolia assigns three errors in which it asserts that the trial court erred in finding that Magnolia waived its right to recover additional delay damages, in failing to award indirect overhead damages, and in failing to award interest on those damages.
Magnolia’s argument on the issue of whether it waived its right to recover indirect overhead expenses is twofold. Mag-noha argues first that the La. R.S. 38:2216 H of the Public Contracts Law provides a statutory prohibition to such waivers by contract, and the trial court erred in failing to apply that law. Further, Magnolia argues that the correct interpretation of the change orders is consistent with its assertion that it reserved the right to recover the damages at issue.
The Parish counters with the argument that Magnolia was paid for all of its delay damages, thus the waiver of its right is not at issue. Therefore, because payment for extra expenses was made, not waived, prohibitions in the Public Contract Law are not applicable to the facts of this matter. The Parish further asserts that the change orders represent the acknowledgment by the parties that adjustments, including indirect overhead damages, were due and the execution of the change orders constitutes full and mutual accord and satisfaction of those damages. We agree.
|5We acknowledge Magnolia’s right to claim overhead or indirect expenses as an element of damages in a breach of contract claim. See: McCarty Corporation v. Industrial Scaffolding, Inc., 413 So.2d 1322 (La.App. 1 Cir.1981). However, for a determination of whether such damages are due we are bound by the fundamental rules of contract interpretation embodied in La. C.C. arts.2045 through 2057. Those rules require the court to determine the common intent of the parties. La.C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La.C.C. art. 2046. We believe the contract and change orders one and two in this case can be interpreted from the four corners, without extrinsic evidence. See: Security Center Protection Services, Inc. v. Lafayette, 95-693 (La.App. 5 Cir. 1/17/96), 668 So.2d 1156, writ denied, 96-0428 (La.3/29/96), 670 So.2d 1217. Further, we find that the testimony offered relating to the final change order supports the trial judge’s reasoning.
Change Order No. 1 gave Magnolia an additional $133,314.00 and an additional twenty (20) days to complete the contract. The change order is supported by documents which show that the increased amount included $18,436.00, requested by Magnolia for initial delay cost. Further, it is noted that the change order contains the following language:
This change order includes not only all direct costs of Contractor such as labor, material, job overhead, and profit markup but also includes any costs for modifications or changes in sequence of work to be performed, delays, rescheduling, disruptions, extended direct or general overhead, acceleration, material or other escalation which includes wages and other impact costs.
The above language makes it clear that Magnolia received payment for all direct *750 and indirect delay damages with the execution of this change order.
|fiIn Change Order No. 2 Magnolia received an increase of $171,085.61 and an additional seventy (70) days. In this change order, Magnolia only requested direct delay damages such as delays “incurred by survey crews” and, “due to lack of servitudes.” Magnolia made no request for indirect damages in this change order. Change Order No. 2 contains the following language:
This change order includes all direct costs of Contractor such as labor, material, job overhead, and profit markup including additional time.
There is no mention of indirect overhead damages due or waived.
The third and final change order was executed after all work on the contract was completed and was for the designated purpose of “final adjustment of unit price, items, extra work and credits.” It decreased the amount of the contract by $33,119.07, after a reconciliation of items originally priced in the contract with those actually installed. This change order contains the following language:
This change order applies only to the items specifically listed. Contractor reserves the right to submit future Change Order requests for items related to delays to this Contract, including overhead and interest expenses. Owner and Contractor agree to waive paragraph SC-10.7 for this Change Order only.
Paragraph SC-10.7 referred to in the above change order is contained in the Supplementary Conditions that supplemented the original contract and reads as follows:
The adjustment in Contract Price and/or Contract Time stated in a Change order shall comprise the total price and/or time adjustment due or owed the CONTRACTOR for the Work or changes defined in the Change Order. By executing the Change Order, the CONTRACTOR acknowledges and agrees that the stipulated price and/or time adjustments include the cost and time adjustments for all work contained in the Change Order, including costs and time adjustments associated with extended overheads, and cumulative impacts or ripple effect on all other non-affected Work under this contract. Signing of the Change Order constitutes full and mutual accord and satisfaction for the adjustment in contract price and/or time as a result of increases or decreases in costs and time of performance caused directly and indirectly from the change, subject to the current scope of the entire Work as set forth in the Contract Documents. |7Acceptance of this waiver constitutes an agreement between OWNER and CONTRACTOR that the Change Order represents an equitable adjustment to the Contract and that CONTRACTOR waives all rights to file a claim on this Change Order after it is properly executed.
The trial judge found, and we agree, that the above clause in the contract was waived only for Change Order No. 3, but was in effect for Change Orders No. 1 and 2. Magnolia received delay damages in the first two change orders, and in accordance with SC 10-7, those change orders constitute full and mutual accord and satisfaction. The waiver on SC 10-7 in Change Order No. 3 does not support a basis for Magnolia’s assertion that it reserved its right to claim new delay damages related to the first two change orders.
Change Order No. 3 related to the reconciliation of the quantities actually installed. The trial court found that none of Magnolia’s claimed indirect overhead was *751 attributable to the subject of Change Order No. 3. That conclusion is born out by the testimony of Jon Simmons, project manager of Magnolia.
At trial Mr. Simmons testified that Magnolia installed the force main with its own crews and subcontracted out the pump stations to Hardtec Corporation. Therefore any claims at issue in this lawsuit are based solely on the installation of the forced mains and are unrelated to the pump station construction. He further testified that Change Order No. 3 was the final reconciliation between the proposed contract quantities to the actual installed quantities, and certain items pertaining to the pump stations.
In conclusion, we find that the judgment of the trial court is correct and well supported by written reasons for judgment. Accordingly, we affirm the judgment from which this appeal is taken.
AFFIRMED.